**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ESTATE OF JOHN BUONOCORE III, et al.

Plaintiffs,

v.

GREAT SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, et al.

Defendants.

Case No. 1:06-cv-00727-GK

**DEFENDANTS' MOTION TO DISMISS**

Defendants, Great Socialist People's Libyan Arab Jamahiriya, Libyan Internal Security, Libyan External Security, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari (the "Libya Defendants")[1], by undersigned counsel, move this Court pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure to dismiss this action against the Libya Defendants on the ground that the Complaint fails to state valid claims against defendants. In support of this Motion, defendants specifically contend that: (1) Plaintiffs' claims are barred by the statute of limitations under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1601 *et seq.* and the Torture Victims Protection Act of 1991 ("TVPA"), 28 U.S.C. § 1350 note; (2) the Complaint fails to state a claim against defendants Abdallah Al-Sanusi, and Ibrahaim Al-Bishari; (3) the Complaint fails to state a claim against defendants under the Flatow Amendment; (4) the Complaint fails to state a claim against defendants under the TVPA; (5) the Complaint fails to

[1] Undersigned counsel does not represent Defendants, Syrian Arab Republic, Syrian Air Force Intelligence or Muhammed Al Khuli (the "Syrian Defendants"). Entries of Default were entered by the Clerk of the Court against the Syrian Defendants on October 4, 2006. This Motion is filed on behalf of the Libya Defendants only.

state a claim for torture under the TVPA; and (6) the Complaint fails to state claims under state common law and statutory law.

Defendants, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari further move this Court pursuant to Rule 12 (b)(5) of the Federal Rules of Civil Procedure to dismiss all claims brought against the individual Libya Defendants in their respective personal capacities on the ground of improper service of process.

In the alternative, plaintiffs' claims against defendant, Mu'ammar al-Qadhafi are subject to the head-of-state doctrine and the Court should stay all pending claims against defendant Mu'Ammar al-Qadhafi, to the extent any such claims survive defendants' statute of limitations, failure to state a claim, and improper service arguments, and until such time as the Executive Branch offers a directive on the applicability of the head-of-state doctrine to Colonel Qadhafi.

In further support of this Motion, defendants respectfully refer this Court to the attached Memorandum of Points and Authorities and Proposed Order.

Respectfully, Submitted,

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

By: /s/ *Thomas J. Whalen*
Thomas J. Whalen, Esq. (Bar No. 208512)

/s/ *Mark A. Johnston*
Mark A. Johnston, Esq. (Bar No. 455764)
1747 Pennsylvania Ave., N.W.,
Twelfth Floor
Washington, D.C. 20006
(202) 659-6600

Wendy West Feinstein, Esq. (Pa ID No. 86698)
(*Admitted Pro Hac Vice*)
600 Grant Street
44th Floor
Pittsburgh, PA 15219
(412) 566-6000

Dated: December 5, 2006

Counsel for Defendants, Great Socialist People's Libyan Arab Jamahiriya, Libyan Internal Security, Libyan External Security, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing **Motion to Dismiss, Memorandum of Points and Authorities and Proposed Order** was electronically filed and served, this 5th day of December, 2006, to:

Richard D. Heideman
Tracy Reichman Kalik
Heideman Nudelman & Kalik, P.C.
1146 19th Street, NW
5th Floor
Washington, DC 20036

/s/ *Mark A. Johnston*
Mark A. Johnston

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ESTATE OF JOHN BUONOCORE III, et al. | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:06-cv-00727-GK |
| GREAT SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, et al. | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

Defendants, Great Socialist People's Libyan Arab Jamahiriya, Libyan Internal Security, Libyan External Security, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari (the "Libya Defendants")[2], by undersigned counsel, respectfully submit this Memorandum of Points and Authorities in support of its Motion to Dismiss, and for reasons described herein state as follows:

## I. INTRODUCTION

This case arises from a terrorist attack at the Leonardo da Vinci Airport, also known as Fiumicino Airport, in Rome, Italy ***on December 27, 1985*** (the "terrorist attack"). Plaintiffs are U.S. citizens who were injured in the attack and individuals who represent the estates of U.S. citizens who were killed during the attack. Plaintiffs allege that, on that date, four terrorists from the Abu Nidal Organization ("ANO") opened fire on, and hurled grenades at, passengers waiting

[2] Undersigned counsel does not represent Defendants, Syrian Arab Republic, Syrian Air Force Intelligence or Muhammed Al Khuli (the "Syria Defendants"). Entries of Default were entered by the Clerk of the Court against the Syria Defendants on October 4, 2006. This Motion is filed on behalf of the Libya Defendants only.

at the TWA and El Al ticket counters.  Plaintiffs claim that the members of ANO who carried out the attack were acting under the instruction and/or the control of the defendants.

The Complaint alleges that funding and support for the attack were provided by the governments of Libya and Syria as state sponsors of terrorism.  Specifically, plaintiffs have alleged that the following Libya Defendants provided support for and sponsored ANO in carrying out the attack:  Great Socialist People's Libyan Arab Jamahiriya ("Libya"), Libyan Internal Security ("LISO"), one of Libya's intelligence services; Libyan External Security ("LESO"), one of Libya's intelligence services; Mu'Ammar Al-Qadhafi ("Qadhafi"), the leader of Libya; Abdallah Al-Sanusi, the head of LISO; and Ibrahaim Al-Bishari, the head of LESO.  Plaintiffs allege that each defendant rendered material support for the attack and that the defendants were directly involved in the attack.

As a result of the attack, plaintiffs claim that they were victims of "torture" and that the deceased plaintiffs' lives were ended by acts of "extrajudicial killing" as defined in Section 3 of the Torture Victims Protection Act of 1991 ("TVPA"), 28 U.S.C. § 1350 note.  Plaintiffs also allege state common law claims for battery, assault, and civil conspiracy; claims for intentional infliction of emotional distress, including solatium, under the "Flatow Amendment", 28 U.S.C. § 1605 note, and state common law; claims for wrongful death, survivorship, as well as aiding and abetting under state common and statutory law.  Plaintiffs further seek punitive damages under both the Flatow Amendment and state common law.  The Complaint contends that defendants are subject to suit in the United States District Courts pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 29 U.S.C. § 1605(a)(7) and unspecified "related statutes."  Complaint, ¶¶ 2-3.

Defendants seek dismissal of all claims with prejudice. The Complaint should be dismissed because it fails to state a claim against the Libya Defendants. Specifically, plaintiffs fail to state claims against defendants under both the Flatow Amendment and the TVPA. In addition, the Complaint fails to state valid claims for "torture" under the TVPA and fails to state claims under state common and statutory law. Finally, plaintiffs have failed to assert valid claims for punitive damages against the Libya Defendants.

Defendants further move for dismissal on the grounds that plaintiffs' claims are barred by the statute of limitations under the FSIA; that this Court lacks personal jurisdiction over defendants, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari; that this Court lacks subject matter jurisdiction under the FSIA; and for improper service.

Finally, plaintiffs' should be barred from proceeding with any claims against defendant Mu'Ammar Al-Qadhafi under the head-of-state doctrine.

## II. ARGUMENT

### A. Summary of Argument

Defendants herein move for dismissal of the Complaint on multiple grounds. Most importantly, plaintiffs' claims are barred by the applicable statute of limitations. The Complaint was filed on April 21, 2006, ***more than 20 years*** after the alleged incident. As shown below, the doctrine of equitable tolling does not apply to the facts of this case, since plaintiffs can prove no facts which would warrant their delay of ***nearly ten years*** in filing suit after any impediment to filing suit was removed. Plaintiffs' claims are time-barred and the entire Complaint should be dismissed with prejudice. Defendants contend that their arguments with respect to the statute of limitations and equitable tolling are ***dispositive of all claims against all defendants*** and that the Court need only address these issues in dismissing the Complaint.

To the extent that any of plaintiffs' claims survive, alternative grounds exist requiring dismissal. Specifically, the Complaint fails to state valid claims against any of the defendants.

The Complaint alleges that defendants Abdallah Al-Sanusi and Ibrahaim Al-Bishari provided aid and material support to members of ANO which caused the terrorist attack that occurred on December 27, 1985. Contrary to plaintiffs' allegations, Abdallah Al-Sanusi was not the head of, nor did he have any connection with, either LISO or LESO at any time from 1985 to the present. Therefore, plaintiffs' conclusory allegations against Abdallah Al-Sanusi are insufficient to state a claim. In addition, Ibrahaim Al-Bishari died in a car accident on September 13, 1997. Plaintiffs' claims against Ibrahaim Al-Bishari should be dismissed.

The Complaint also asserts claims against all defendants for intentional infliction of emotional distress, including solatium, under 28 U.S.C. § 1605 note, the "Flatow Amendment." However, plaintiffs cannot state valid claims against Libya, LISO and LESO under the Flatow Amendment since these defendants are either a foreign state or agencies or instrumentalities of a foreign state. In seeking claims for punitive damages against the individual Libya Defendants, the Complaint contends that these were all acting within the scope of their respective offices when they provided support to the ANO terrorists. Plaintiffs have failed to state claims under the Flatow Amendment against defendants, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari because the Complaint does not include any claims against the individual defendants in their personal capacity, as the Flatow Amendment requires.

Plaintiffs further allege in their Complaint that they were victims of "torture" as a result of the terrorist attack, and that the deceased plaintiffs were murdered by acts of "extrajudicial killing" as defined in Section 3 of the Torture Victims Protection Act of 1991 ("TVPA"), 28 U.S.C. § 1350 note. However, it is well settled that plaintiffs cannot state claims against Libya,

LISO and LESO under the TVPA. As with their claims asserted under the Flatow Amendment, plaintiffs have failed to state claims under the TVPA against the individual Libya Defendants because the Complaint does not include any claims against the these defendants in their personal capacity.

The Complaint also fails to state a claim against any defendant for torture under the TVPA. Plaintiffs do not allege that they were in defendants' custody or physical control at the time of the incident; and that the alleged acts undertaken by defendants were done in order to obtain information or a confession, to punish the plaintiffs or a third party, to intimidate or coerce plaintiffs or a third party, or for a discriminatory purpose. Plaintiffs' TVPA claims should be dismissed.

The Complaint also asserts generic claims under state common law and statutory law. However, these claims do not include any choice of law provisions or allegations. Significantly, the Complaint does not specify the choice of applicable state common law upon which each respective plaintiff bases his or her damages. Plaintiffs also do not identify ***any*** statutes upon which they base their "state statutory law" claims. Plaintiffs have failed completely to identify with particularity the state law claims upon which they base their FSIA claims and the state law claims. These claims should be dismissed against all defendants.

In addition to the grounds asserted above for dismissal of plaintiffs' Flatow Amendment and TVPA claims against the individual Libya Defendants, these claims should be dismissed pursuant to Rule 12(b)(5) for improper service. Specifically, the service provisions of § 1608 of the FSIA do not apply to claims brought against individual Libya Defendants in their personal capacities. Therefore, in order to maintain their claims under the Flatow Amendment and TVPA, plaintiffs must serve the individual Libya Defendants in a manner which is consistent

with Rule 4(f) of the Federal Rules of Civil Procedure. Plaintiffs have not complied with the service provisions of Rule 4(f) and their claims against the individual Libya Defendants under the Flatow Amendment and TVPA should be dismissed due to improper service.

Finally, plaintiffs' contend that Mu'Ammar al-Qadhafi, as the "the leader of Libya," is liable for the injuries suffered by plaintiffs as a result of the terrorist attack. However, the FSIA does not apply to foreign heads of state. Rather, the determination as to whether a foreign head of state enjoys immunity from suit rests with the Executive Branch. The U.S. Attorney General has not determined whether the head-of-state doctrine applies to Colonel Qadhafi. Therefore, plaintiffs should be barred from proceeding with their claims against defendant Mu'Ammar al-Qadhafi subject to the Executive Branch's decision regarding Colonel Qadhafi's immunity under the head-of-state doctrine.

### B. The Complaint Fails to State a Claim against Defendants

#### (1) Plaintiffs' Claims are Barred by the Statute of Limitations under the FSIA and the TVPA

All of the plaintiffs' claims against ***all of the Libya Defendants*** should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because all of the claims are time-barred. This Rule 12(b)(6) motion should be granted, since it is apparent from the allegations of the Complaint that the claims raised are barred by the statute of limitations. *See Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 292 (D.D.C. 2005) ("[a] defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint.").

It is clear from the face of the Complaint that all of the claims raised by the plaintiffs are time-barred. Plaintiffs filed the instant Complaint on April 21, 2006. The damage for which plaintiffs seek recovery occurred on December 27, 1985, ***more than 20 years before the***

***Complaint was filed***. In addition, the doctrine of equitable tolling does not apply to the facts of this case since plaintiffs can prove no facts which would warrant their delay of ***nearly ten years*** in filing suit after any impediment to filing suit was removed (*e.g.*, the enactment of the 1996 Amendment to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1601 *et seq.*, on April 24, 2006).[3] Plaintiffs' claims are time-barred and the entire Complaint should be dismissed with prejudice.

The Complaint contends that defendants are subject to suit in the United States District Court pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(7). In addition to alleging various state common law and statutory law claims, plaintiffs claim that they were victims of "torture," and that the deceased plaintiffs' lives were ended by acts of "extrajudicial killing" as defined in Section 3 of the Torture Victims Protection Act of 1991 ("TVPA"), 28 U.S.C. § 1350 note.

Under the FSIA, foreign states enjoy immunity from suit in U.S. courts unless that immunity has been waived or abrogated pursuant to an exception enumerated in the FSIA. *Acree v. Republic of Iraq*, 370 F.3d 41, 44 (D.C. Cir. 2004). In 1996, § 1605(a)(7) was added to the FSIA and created an exception to foreign sovereign immunity in civil suits "in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture" or other terrorist acts. *Id*. (*quoting* 28 U.S.C. § 1605(a)(7)). "This exception applies only if the defendant foreign state was designated as a state sponsor of terrorism at the time the alleged acts of torture occurred." *Id*. (*citing* 28 U.S.C. § 1605(a)(7)(A)). Plaintiffs in this case allege that Libya has been designated a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605(a)(7). Complaint, ¶ 28.

[3] Pub. L. No. 104-132, § 221, 110 Stat. 1214 [April 24, 1996] (codified at 28 U.S.C. § 1605(a)(7)).

The statute of limitation for FSIA claims brought pursuant to § 1605(a)(7) is set forth in § 1605(f). Section 1605(f) of the FSIA states:

> No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

28 U.S.C. § 1605(f). Similarly, the TVPA has a 10-year statute of limitations. 28 U.S.C. § 1350 note (c) ("No action shall be maintained under this section unless it is commenced within 10 years after the cause of action arose").

The Complaint in the case before this Court was clearly filed more than ten years after the cause of action arose on December 27, 1985. Plaintiffs, therefore, presumably rely upon the doctrine of equitable tolling in filing their more than 20 year-old claims. However, the doctrine of equitable tolling does not extend the statute of limitations in this case another ten years, or over 20 years after the cause of action arose, to April, 2006, when plaintiffs filed their Complaint. To the extent the principle of equitable tolling applies to the facts of this case, it would only extend the statute of limitations ***for a reasonable time*** after defendants were no longer immune from suit in 1996, not for ten years after the 1996 Amendment to the FSIA.

Equitable tolling is an equitable principle that extends the period within which a plaintiff may file a claim. The burden is on the plaintiff to demonstrate that it is entitled to equitable tolling. *Acre v. Garcia*, 434 F.3d 1254 (11th Cir. 2006). "The plaintiff bears this burden because equitable tolling is an exception to the rule of the statute of limitations, not the rule itself." *Id.* Equitable tolling is ***only appropriate in extraordinary circumstances***. *Id*. (*citing Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (emphasis added). The D.C. Circuit has instructed that even "where a plaintiff establishes circumstances justifying equitable tolling, the plaintiff is given extra time '*only* if he needs it'." *Vine v. Republic of Iraq*, 2006 U.S. Dist.

LEXIS 63716, at *27 (D.D.C. 2006) (*quoting Phillips v. Heine*, 984 F.2d 489, 492 (D.C. Cir. 1993)) (emphasis in original). Moreover, if the plaintiff does not need extra time, the D.C. Circuit has held that "there is no basis for depriving the defendant the protection of the statute of limitations." *Phillips*, 984 F.2d at 492. Importantly, equitable tolling "does not bring about an automatic extension of the statute of limitations by the length of the tolling period." *Id*. The court should "only extend the time for filing by a reasonable period after the tolling circumstance [is] mended." *Id*.

What constitutes a "reasonable period" will depend on the facts of the case and the diligence of the plaintiff. *See generally*, *Burnett v. New York Cent. R.R.*, 380 U.S. 424 (1965) For example, in *Phillips* the D.C. Circuit determined that ***10 months*** was too long to extend the statute of limitations. *Phillips*, 984 F.2d at 492. In that case, plaintiff's son was a passenger in a plane which disappeared off the coast of Italy. No remains of plaintiff's son were ever found and plaintiff petitioned various governmental entities for a report of death. Slightly less than three years after his son's plane disappeared, plaintiff received a California court declaration of death. Nearly ten months after receiving the declaration of death, plaintiff filed a suit against the pilot's conservator under the Death on the High Seas Act ("DOHSA"), 46 U.S.C. app. § 761 *et seq*. The district court dismissed plaintiff's claims as time-barred under DOHSA's three-year statute of limitations. *Id*. at 490. Upholding the ruling of the district court, the D.C. Circuit rejected plaintiff's argument that the principle of equitable tolling should be applied in that case. Specifically, the Court noted:

> Here the justifications for delay, viewed in the light most favorable to plaintiff; ended no later than the California court's certificate of February 26, 1990. The statute, without any tolling, did not expire until March 21, 1990. As nothing had prevented plaintiff from gathering information in the preceding years, and more than three weeks remained, we question whether there was any need to

> extend the statute at all. But plaintiff's reasonable needs surely did not require extending the time the full nine and one-half months that passed before he filed suit on December 12, 1990.

*Id* at 492.

The legislative history of the TVPA discussing equitable tolling confirms the expectation of diligence on the part of the plaintiff and that the limitations period was designed to prevent stale claims. H.R. Rep. 102-367 states "a ten year statute of limitations insures that the Federal Courts will not have to hear stale claims. In some instances, such as where a defendant fraudulently conceals his or her identification or whereabouts from the claimant, equitable tolling remedies may apply to preserve the claimant's rights." S. Rep. 102-249 provides examples of when and how equitable tolling may apply to a claim. Footnotes 25 to 28 of S. Rep. 102-249 cite specific cases in which the principle of equitable tolling was at issue, including *Burnett*, 380 U.S. 424 (equitable tolling of Federal Employers' Liability Act claims appropriate where plaintiff filed suit outside the statute of limitations in Federal court after timely filed claims were dismissed by state court on grounds of improper venue), and *Anderson v. Wisconsin Gas Co.*, 619 F. Supp. 635 (E.D. Wis. 1985) (holding that equitable tolling did not apply to plaintiff's Title VII claim where she was not "prevented from asserting her rights"). The cases cited as examples of how Congress intended the principle of equitable tolling to be applied in TVPA cases sharply illustrate that the application of the principle of equitable tolling does not restart the clock by giving the plaintiff an additional ten year limitations period to file a claim. Rather, the legislative history, and the cases cited therein, makes clear that the equitable tolling period is only the period during which there was some impediment to plaintiff in bringing the claim, such as the plaintiff's imprisonment or while the defendant was concealing his own whereabouts.

There is no support in the legislative history of the TVPA, or elsewhere, for the proposition that a plaintiff should receive the benefit of the entire limitations period, regardless of need and regardless of length of the impediment.  There is an obvious lack of "equity" and fairness in such a proposition because it would subject defendants to stale claims.  *Phillips v. Heine*, 984 F.2d 489, 492 (D.C. Cir. 1993), should be viewed as binding precedent on this issue in this Circuit.

Plaintiffs do not allege any facts, nor can any be reasonably inferred from the allegations in the Complaint, that would support the application of equitable tolling for any substantial length of time.  There are no allegations that the plaintiffs did not have necessary facts to assert their claims within the ten-year statute of limitations, or within a reasonable time after the Libya Defendants were no longer immune from suit.  In fact, the Complaint concedes that any information concerning the alleged connection between Libya, ANO and the ***December 27, 1985*** attack at the Leonardo da Vinci Airport in Rome, Italy was available to plaintiffs as long ago as February 12, 1988 during the trial of Khaled Ibrahim Mahmood.[4]  *See* Complaint, ¶¶ 48-63. Plaintiffs could have readily gathered facts to satisfy the federal notice pleading requirements within the requisite time periods, or at the very least, within a reasonable time after the cloak of immunity was removed from defendants.  However, plaintiffs cannot argue that a delay in gathering facts was unavoidable and that they needed an ***additional ten years*** to do so. Moreover, there are no allegations of defendants' misconduct that lulled plaintiffs into inaction for ten years (or any length of time).  Critically, as the Supreme Court succinctly stated, this is a case in which plaintiffs have "slept on their rights."  *Burnett*, 380 U.S. at 428 (1965).

---

[4]  Defendants specifically deny the factual allegations asserted in the Complaint.  However, for purposes of this Motion only, defendants contend that the information upon which plaintiffs base their allegations has been available since the 1988 trial of Khaled Ibrahim Mahmood, at the very least.

In the complete absence of any allegations, facts or statutory authority supporting the tolling of the statute of limitations more than 20 years after the cause of action arose, and nearly ten years after defendants were no longer immune from suit, plaintiffs' claims should be dismissed as time-barred and the entire Complaint should be dismissed with prejudice.

**(2) The Complaint Fails to State a Claim against Defendants Abdallah Al-Sanusi, and Ibrahaim Al-Bishari**

To the extent that plaintiffs' claims survive defendants' statute of limitations and equitable tolling arguments, the Complaint also fails to state a claim against defendants Abdallah Al-Sanusi and Ibrahaim Al-Bishari.

The Complaint alleges that defendants Abdallah Al-Sanusi and Ibrahaim Al-Bishari provided aid and material support to members of ANO which caused the terrorist attack that occurred on December 27, 1985. The Complaint does not provide any allegations concerning the time or details of the specific acts of aid or material support provided by Abdallah Al-Sanusi and Ibrahaim Al-Bishari. Rather, plaintiffs only allege that Abdallah Al-Sanusi was the head of LISO, that Ibrahaim Al-Bishari was the head of LESO, and that LISO and LESO are two of the Libyan intelligence services through which Libya sponsored ANO. *See* Complaint, ¶¶ 30-34. Contrary to plaintiffs' allegations, Abdallah Al-Sanusi was not the head of, nor did he have any connection with either LISO or LESO at any time from 1985 to the present. Therefore, plaintiffs' conclusory allegations against Abdallah Al-Sanusi are insufficient to state a claim. In addition, Ibrahaim Al-Bishari died in a car accident on September 13, 1997. Plaintiffs' claims against Ibrahaim Al-Bishari therefore should be dismissed.

It is well settled that a Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). When adjudicating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the

Court must view all the allegations and facts in the complaint in the light most favorable to the plaintiffs, and it must grant the plaintiffs the benefit of all inferences that can be derived from those facts. *Barr. v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The Court may only consider the facts alleged in the complaint, any documents attached as exhibits, and matters about which the Court may take judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be granted when a defendant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell v. Executive Comm. of the United Food and Commercial Workers Pension Plan for Employees*, 191 F. Supp. 2d 10, 15 (D.D.C. 2002) (*quoting In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1442 (D.C. Cir. 1989) and *Conley v. Gibson*, 355 U.S. 41, 45-46, (1955)).

Plaintiffs' allegations against defendant Abdallah Al-Sanusi are as follows:

> 30. Defendant Libyan Internal Security ("LISO") is one of the Libyan intelligence services through which Libya sponsored Abu Nidal, which caused the terrorist acts described below.
>
> * * *
>
> 33. Defendant Major Abdallah al-Sanusi was head of the Libyan Internal Security Agency and performed acts within the scope of his office, which caused the terrorist acts described below.

Complaint, ¶¶ 30, 33. The Complaint does not identify any specific acts performed by Abdallah Al-Sanusi. Instead, plaintiffs rest solely upon their allegation that Abdallah Al-Sanusi was the head of LISO at some undetermined point in time in stating their case against Major Al-Sanusi.

Notwithstanding plaintiffs' conclusory allegations to the contrary, Abdallah Al-Sanusi was not the head of, nor did he have any connection with LISO at any time from 1985 to the present.[5] Based upon the foregoing, plaintiffs can prove no cause of action from the allegations set forth against Major Al-Sanusi which would entitle them to relief and these claims should be dismissed.

The Complaint also makes the following allegations against Ibrahaim Al-Bishari:

> 31. Defendant Libyan External Security ("LESO") is one of the Libyan intelligence services through which Libya sponsored Abud Nidal, which caused the terrorist acts described below.
>
> * * *
>
> 34. Defendant Ibrahaim al-Bishari was the head of the Libyan External Security Agency and performed acts within the scope of his office, which caused the terrorist acts described below.

The Complaint once again does not assert any factual allegations concerning the alleged acts undertaken by Mr. Al-Bishari which resulted in the terrorist attack. Nonetheless, plaintiffs' claims are irrelevant since Ibrahaim Al-Bishari died in a car accident on September 13, 1997. *See* Certificate of Death in Arabic, and English translation, attached hereto as Exhibits A and B. Clearly, plaintiffs' are unable to maintain any claims against Ibrahaim Al-Bishari and all such claims should be dismissed.

**(3) The Complaint Fails to State a Claim against Defendants under the Flatow Amendment**

As additional grounds for dismissal, the Complaint fails to state valid claims against any of the Libya Defendants under the Flatow Amendment, 28 U.S.C. § 1605 note. Defendants

[5] Counsel for defendants has been advised that Major Al-Sanusi is currently hospitalized for treatment of a medical condition. Due to Major Al-Sanusi's medical condition, as well as his status as a foreign defendant, counsel for defendants is unable to provide the Court with supporting documentation at this time. To the extent necessary, defendants will supplement their filing with supporting documentation and proof that Major Al-Sanusi was not the leader of LISO during the relevant time period as soon as it becomes available.

maintain that the entire Complaint should be dismissed for plaintiffs' failure to file within the applicable statute of limitations (*see* Section II (B), above). However, to the extent that this claim survives and in the alternative, the Court should dismiss plaintiffs' Flatow Amendment claims because the Complaint fails to state a valid claim against any defendant under the statute.

The Complaint asserts claims against all defendants for intentional infliction of emotional distress, including solatium, under 28 U.S.C. § 1605 note, the "Flatow Amendment." Complaint, ¶¶ 102-104. In seeking claims for punitive damages under the Flatow Amendment against defendants Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari, the Complaint also contends that these defendants sponsored and provided material support for the acts performed by the ANO terrorists. Complaint, ¶¶ 133-134. The Complaint further alleges that defendants, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari were all acting within the scope of their respective offices. Complaint ¶ 135. However, plaintiffs cannot state valid claims against Libya, LISO and LESO under the Flatow Amendment since these defendants are either a foreign state, or agencies or instrumentalities of a foreign state.

Plaintiffs have also failed to state claims under the Flatow Amendment against defendants, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari because the Complaint does not include any claims against the individual defendants in their personal capacity.[6]

The Flatow Amendment provides in relevant part:

> (a) An official, employee, or agent of a foreign state designated as a state sponsor of terrorism designated under section 6(j) of the Export Administration Act of 1979 [50 USCS Appx § 2405(j)] while acting within the scope of his or her office, employment, or agency shall be liable to a United States national or the national's

[6] By arguing that the Complaint fails to state claims against the individual Libya Defendants in their personal capacities under the Flatow Amendment and the TVPA (*see* Section II (B)(4), below), the individual Libya Defendants do not waive the defense of improper service of process. *See* Section II(C), herein.

> legal representative for personal injury or death caused by acts of that official, employee, or agent for which the courts of the United States may maintain jurisdiction under section 1605(a)(7) of title 28, United States Code, for money damages which may include economic damages, solatium, pain, and suffering, and punitive damages if the acts were among those described in section 1605(a)(7).

It is well settled that the Flatow Amendment does not provide a cause of action against foreign states, or against agencies or instrumentalities of a foreign state. *See Collett v. Socialist Peoples' Libyan Arab Jamahiriya*, 362 F. Supp. 2d 230, 241 (D.D.C. 2005) (*citing Acree v. Republic of Iraq*, 370 F.3d 41, 59 (D.C. Cir. 2004) (internal citation omitted)). The D.C. Circuit Court of Appeals has held that:

> neither 28 U.S.C. § 1605(a)(7) nor the Flatow Amendment, nor the two considered in tandem, creates a private right of action against a foreign government. Section 1605(a)(7) merely waives the immunity of a foreign state without creating a cause of action against it, and the Flatow Amendment only provides a private right of action against officials, employees, and agents of a foreign state, not against the foreign state itself.

*Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1033 (D.C. Cir. 2004). Therefore, plaintiffs' Flatow Amendment claims against defendants Libya, LISO and LESO for intentional infliction of emotional distress, including solatium, must be dismissed.

In order to sustain a cause of action under the Flatow Amendment against officials, employees, and agents of foreign states, all such claims must be brought against those officials in their ***individual or personal*** capacities, as opposed to their official capacities. *See Acree*, 370 F.3d at 59 (*citing Cicippio*, 353 F.3d at 1034); *see also Pugh v. Socialist People's Libyan Arab Jamahiriya*, 2006 U.S. Dist. LEXIS 58033, *25 (D.D.C. 2006)[7] ("actions under the Flatow Amendment, which provides for liability against individuals 'acting within the scope of his or

[7] For ease of reference, a copy of *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 2006 U.S. Dist. LEXIS 58033 (D.D.C. 2006) is attached hereto as Exhibit C.

her office,' 28 U.S.C. § 1605 note, must be brought against individual officers in their personal capacity.") (*citing Acree*, 370 F.3d at 59 ("[A]ny suit against an official of a foreign state must be a suit in that official's *personal* capacity") (emphasis in original)). In *Cicippio*, the D.C. Circuit explained the rationale behind its holding as follows:

> As the Supreme Court repeatedly has explained, an official-capacity claim against a government official is in substance a claim against the government itself. . . By definition, a damages judgment in an official-capacity suit is enforceable against the state itself (and only against the state). . . Thus, to construe the Flatow Amendment as permitting official-capacity claims would eviscerate the recognized distinction between suits against governments and suits against individual government officials. . . The text of the Flatow Amendment and Section 1605(a)(7), as well as all relevant background interpretive principles . . . foreclose any such construction.

*Cicippio*, 353 F.3d at 1034 (*quoting* Brief for the United States as *Amicus Curiae* at 17) (internal citations omitted). Therefore, claims brought under the Flatow Amendment against an official, employee, or agent of a foreign state acting only in his or her official capacity should be dismissed. *See Acree*, 370 F.3d at 59 (dismissing Flatow Amendment claims against Sadam Hussein "in his official capacity as President of the Republic of Iraq.").

In the case before this Court, plaintiffs have not alleged ***any*** claims against defendants, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari in their respective personal capacities. Rather, each individual Libya Defendant is sued in his official capacity only. The Complaint specifically alleges the following:

> 32. Defendant Mu'ammar al Qadhafi is the leader of Libya and performed acts within the scope of his office, which caused the terrorist acts described below.
>
> 33. Defendant Major Abdallah al-Sanusi was head of the Libyan Internal Security Agency and performed acts within the scope of his office, which caused the terrorist acts described below.

> 34. Defendant Ibrahaim al-Bishari was the head of the Libyan External Security Agency and performed acts within the scope of his office, which caused the terrorist acts described below.
>
> * * *
>
> 37. Defendants . . . Mu'Ammar Al-Qadhafi, Major Abdallah Al-Sanusi, and Ibrahaim Al-Bishari performed acts within the scope of their offices, which cased the extrajudicial killings and personal injuries resulting from the act of terrorism described herein. Accordingly, said Defendants are jointly and severally liable to Plaintiffs
>
> * * *
>
> 135. As required by the Flatow Amendment, . . . Mu'Ammar Al-Qadhafi, Major Abdallah Al-Sanusi, and Ibrahaim Al-Bishari were acting within the scope of their duties when they supplied, facilitated or authorized the provision of material support to the ANO and the execution of the Rome Airport Attack.

In addition to the numbered paragraphs of the Complaint which fail to assert any claims against the individual Libya Defendants in their personal capacities, the case caption names each individual as a defendant in his respective official capacity. The Complaint names as defendants "Mu'Ammar Al-Qadhafi, Supreme Leader of the Great Socialist People's Libyan Arab Jamahiriya"; "Major Abdallah Al-Sanusi, Chief, Libyan Internal Security"; and "Ibrahaim Al-Bishari, Chief, Libyan External Security." Plaintiffs have clearly failed to state any valid claims against the individual Libya Defendants under the Flatow Amendment as they have only asserted claims against the individual Libya Defendants in their official capacities, not their personal capacities as required. *Cf. Pugh*, 2006 U.S. Dist. LEXIS 58033 at *20-26 (claims against individual defendants in their personal capacities permitted where complaint specifically asserted causes of action against individual defendants in both their official and personal capacities).

Based upon the foregoing, plaintiffs cannot state claims against Libya, LISO and LESO under the Flatow Amendment, and they have also failed to state valid claims under the Flatow

Amendment against defendants Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari. Accordingly, plaintiffs' claims under the Flatow Amendment should be dismissed with prejudice.

**(4) The Complaint Fails to State a Claim against Defendants under the TVPA**

As with their failure to state a claim under the Flatow Amendment, plaintiffs have failed to state a claim against any defendant pursuant to the Torture Victims Protection Act of 1991 ("TVPA"), 28 U.S.C. § 1350 note. Defendants once again assert that the entire Complaint, including all TVPA claims against the Libya Defendants, should be dismissed for plaintiffs' failure to file within the applicable statute of limitations (*see* Section II (B), above). In addition, the Court may also dismiss plaintiffs' TVPA claims on the ground that the Complaint fails to state a claim under the express terms of the TVPA.

Plaintiffs allege in their Complaint that they were victims of "torture" as a result of the terrorist attack, and that the deceased plaintiffs were murdered by acts of "extrajudicial killing" as defined in Section 3 of the TVPA. The Complaint contends that Libya, LISO and LESO sponsored and provided material support for these acts of torture and extrajudicial killing which were performed by the ANO terrorists. However, it is well settled that plaintiffs cannot state claims against Libya, LISO and LESO under the TVPA. Such claims can only be brought against individuals. In addition, similar to their claims asserted under the Flatow Amendment, plaintiffs have failed to state claims under the TVPA against defendants Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari because the Complaint does not include any claims against the individual defendants in their personal capacity.

The TVPA expressly limits claims for torture and judicial killing to those brought against ***individuals only***:

> (a) Liability. An individual who, under actual or apparent authority, or color of law, of any foreign nation—
>
> (1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or
>
> (2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.

28 U.S.C. § 1350 note, Section 2. "The TVPA explicitly limits its applicability to 'individual' defendants." *Collett*, 362 F. Supp. at 242; *see also Pugh*, 2006 U.S. Dist. LEXIS 58033 at *40 ("the terms of the TVPA make clear that its applicability is limited to suits against individuals, not foreign states.") (citation omitted).

In dismissing claims under the TVPA against governmental defendants in *Collett*, Judge Urbina of this Court noted that, "[t]he legislative history to the TVPA further indicates that the term 'individual' is used 'to make crystal clear that foreign states or their entities cannot be sued under this bill under any circumstances: only individuals may be sued.'" *Collett*, 362 F. Supp. at 242 (*quoting* S. Rep. No. 102-249, at 3 (1991); *see also Pugh*, 2006 U.S. Dist. LEXIS 58033 at *40 ("the legislative history of the TVPA demonstrates that Congress did not intend for it to be used to hold foreign states and their instrumentalities liable."). The Court in *Collett* also specifically rejected plaintiffs' argument that the defendants in that case, Libya and LESO, could be liable for the acts of government officials under the theory of *respondeat superior*. *Collett*, 362 F. Supp. at 242 ("The court will not circumvent congressional intent by imposing liability on Libya or the ESO based on *respondeat superior* principles."). Similarly, in *Pugh*, Judge Kennedy of this Court dismissed plaintiffs' claims against Libya and LESO under the TVPA stating that, "the TVPA cannot be used to hold the government defendants liable for the torture or extrajudicial killings of individuals under its authority. Any contrary holding would 'produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be

controlling.'" *Pugh*, 2006 U.S. Dist. LEXIS 58033 at *42 (*quoting Griffin v. Oceanic Contractors*, 458 U.S. 564, 571, 102 S. Ct. 3245, 73 L. Ed. 2d 973 (1982).

As with claims brought under the Flatow Amendment, any suit under the TVPA against an official of a foreign state should be brought against that official in his or her personal capacity. The distinction between claims brought against an individual in his personal, versus his official capacity is critical:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.

*Pugh*, 2006 U.S. Dist. LEXIS 58033 at *22-23 (*quoting Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (citation and internal quotations omitted)). Moreover, "[i]t is generally recognized that a suit against an individual acting in his official capacity is the practical equivalent of a suit against the sovereign directly." *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1101 (9th Cir. 1990) (*citing Monell v. Department of Social Services*, 436 U.S. 658, 690 n. 55 (1978)). The principles and rationale behind limiting claims under the Flatow Amendment to those claims brought against individuals, in their personal capacities only, apply equally to claims brought under the TVPA. Accordingly, plaintiffs may only bring claims under the TVPA against individuals in their personal capacities.

In the instant case, similar to their claims against the individual Libya Defendants under the Flatow Amendment, plaintiffs have alleged TVPA claims against defendants Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari in their respective ***official capacities only***. *See* Complaint, ¶¶ 32-34, 37, 135. In doing so, plaintiffs' TVPA claims against the individual Libya Defendants are the practical equivalent of claims against a foreign sovereign,

Libya, which is strictly prohibited under the TVPA. To allow plaintiffs to proceed with these claims against the individual Libya Defendants in their official capacities is contrary to Congress's intent to limit TVPA claims to those against individuals only. *See Collett*, 362 F. Supp. at 242. The Court should, therefore, dismiss plaintiffs' claims under the TVPA against the individual Libya Defendants, since plaintiffs have failed to allege any claims against these defendants in their personal capacities.

For the foregoing reasons plaintiffs in the case before this Court cannot bring claims under the TVPA against defendants Libya, LISO and LESO, and accordingly, plaintiffs' TVPA claims against defendants Libya, LISO and LESO must be dismissed with prejudice. Claims under the TVPA against individuals must be brought against them in their individual capacities which are not the claims at the case at bar. Plaintiffs have alleged only claims against the individual Libya Defendants in their official capacities. Therefore, these claims must be dismissed as well by the Court.

**(5) <u>The Complaint Fails to State a Claim for Torture under the TVPA</u>**

The Complaint states that the terrorist attack at the Leonardo da Vinci Airport in Rome, Italy on December 27, 1985 was committed by four ANO terrorists. The terrorists allegedly divided themselves into two separate pairs of attackers who simultaneously, "in a burst of gunfire and exploding grenades," opened fire on passengers at the TWA and El Al check-in counters, as well as customers in front of a nearby restaurant and bar. Complaint, ¶¶ 39-42. Plaintiffs state that they are U.S. citizens who were either personally injured in the attack, or individuals who represent the estates of U.S. citizens who were killed during the attack. Plaintiffs contend that the acts of physical violence and/or death undertaken by ANO against plaintiffs constitute "torture" as defined in Section 3 of the Torture Victims Protection Act of

1991 (the "TVPA"), 28 U.S.C. § 1350 note. Plaintiffs further contend that the Libya Defendants provided support for and sponsored ANO in carrying out the attack and are therefore liable for ANO's alleged acts of torture under the TVPA.

Assuming, *arguendo*, that plaintiffs may bring any TVPA claims against the individual defendants in their official capacities, or that the Court finds plaintiffs have stated claims against the individual defendants in their personal capacities, plaintiffs have nonetheless failed to state a claim for torture under the TVPA. Specifically the Complaint fails to set forth sufficient facts which show that plaintiffs were in defendants' custody or physical control at the time of the incident; and that the alleged acts undertaken by defendants were done in order to obtain information or a confession, to punish the plaintiffs or a third party, to intimidate or coerce plaintiffs or a third party, or for a discriminatory purpose. Plaintiffs have clearly failed to satisfy the pleading requirements for claims of torture under the TVPA. Accordingly, plaintiffs' claims for torture under the TVPA should be dismissed.

The TVPA defines torture as follows:

> (1) the term 'torture' means any act, directed against an individual ***in the offender's custody or physical control***, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual ***for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind***; and
> (2) mental pain or suffering refers to ***prolonged*** mental harm caused by or resulting from—
>
> (A) the intentional infliction or threatened infliction of severe physical pain or suffering;
>
> (B) the administration or application, or threatened administration or application, of mind altering substances or

> other procedures calculated to disrupt profoundly the senses or the personality;
> (C) the threat of imminent death; or
> (D) the threat that another individual will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind altering substances or other procedures calculated to disrupt profoundly the senses or personality.

28 U.S.C. § 1350 note, Section 3(b) (emphasis added). In determining whether or not the alleged conduct rises to the level of "torture" as defined in the TVPA, both the severity of the alleged acts as well as the purposes for which the acts were committed are essential. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 92 (D.C. Cir. 2002).

In *Price*, the D.C. Circuit explained, "[t]he severity requirement is crucial to ensuring that the conduct proscribed by the [United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment] and the TVPA is sufficiently extreme and outrageous to warrant the universal condemnation that the term 'torture' both connotes and invokes." *Id*. at 92 (citations omitted). "The term 'torture,' in the United States and international usage, is usually reserved for extreme, deliberate and unusually cruel practices, for example, sustained systematic beating, application of electric currents to sensitive parts of the body, and tying up or hanging in positions that cause extreme pain." *Id*. at 92-93 (*quoting* S. Exec. Rep. No. 101-30, at 14 (1990)).

The D.C. Circuit in *Price* held that in order for an act of violence to rise to the level of torture, the pain and suffering inflicted upon the plaintiff must be done for a particular purpose. Section 3 of the TVPA enumerates purposes which, if properly alleged, would give rise to a claim of torture. Although the list of purposes provided in Section 3 of the TVPA is not meant to be exhaustive, "any non-enumerated purpose would have to be similar in nature to those mentioned in order to elevate an act of violence into an act of torture." *Price*, 294 F.3d at 93

(citation omitted).  Moreover, "whatever its specific goal, torture can occur under the FSIA only when the production of pain is purposive, and not merely haphazard."  *Id*.

In *Price*, plaintiffs were arrested and placed in a Libyan prison while awaiting trial on charges of allegedly taking photographs that constituted anti-revolutionary propaganda.  The Complaint alleged that plaintiffs were "kicked, clubbed and beaten" by prison guards, and "interrogated and subjected to physical, mental and verbal abuse."  *Price*, 294 F.3d at 86. Plaintiffs further alleged that their incarceration was done by Libya in support of Iran's taking of hostages from the U.S. Embassy in Tehran.  The D.C. Circuit held that the complaint in *Price* failed to allege sufficient facts to withstand a motion to dismiss on plaintiffs' TVPA torture claims.  Specifically, plaintiffs did not allege facts concerning the severity, frequency and duration of the alleged beatings necessary to rise to the level of torture. *Id*. at 94-95; *see also Simpson v. Socialist People's Libyan Arab Jamahiriya*, 326 F.3d 230, 234 (D.C. Cir. 2003) (allegations that plaintiff was interrogated and held incommunicado, threatened with death, and forcibly separated from her husband insufficient to constitute "torture" under the TVPA).  The court also held that plaintiffs did not allege sufficient facts concerning the purpose for the alleged torture:

> Furthermore, the present complaint says virtually nothing about the purpose of the alleged torture. Plaintiffs seemingly have left it for the courts to conjure some illicit purpose to fill in this pleading gap. Obviously this will not do.

*Price*, 294 F.3d at 94.  In dismissing plaintiffs' case, the *Price* court established that plaintiffs asserting claims of torture must allege specific facts which, if proven, would constitute torture pursuant to the definition provided by the TVPA.

Similar to *Price*, the Complaint in the case before this Court does not allege sufficient facts to state claims for torture under the TVPA.  Unlike *Price*, the plaintiffs have not alleged

that the acts of violence at issue in this case were "directed against an individual in the offender's custody or physical control." Rather, the Complaint merely alleges that the terrorist attack occurred at the Leonardo da Vinci Airport in Rome, Italy on December 27, 1985 and was carried out by four ANO terrorists. The facts of this case are not even comparable to the facts in *Price* insofar as the plaintiffs in this case were not, and do not claim to have been at any point in time, hostages in the control or custody of defendants. Moreover, the defendants in this case, in contrast to the defendant in *Price*, are not alleged to have committed any alleged acts of torture. All such acts were allegedly committed by members of ANO. Plaintiffs have failed to allege sufficient facts to show that the alleged acts of violence were directed against them while in the custody or physical control of the defendants.

The Complaint also fails to allege ***any facts*** concerning the degree and duration of the pain and suffering experienced by the plaintiffs. In fact, plaintiffs allege only that the terrorists simultaneously opened fire on passengers at the TWA and El Al check-in counters, as well as customers in front of a nearby restaurant and bar. Based upon this limited information, the Complaint then makes the conclusory allegation that the acts of physical violence undertaken by ANO against plaintiffs constitute torture as defined in Section 3 of the TVPA. As was the case in *Price*, plaintiffs in the case before this Court have failed to allege specific facts to support their claims of torture under the TVPA.

The Complaint also fails to provide ***any*** allegations concerning the purpose for the alleged acts of torture.[8] Plaintiffs must allege a particular purpose by the defendants for the alleged acts of torture. *Price*, 294 F.3d at 93; *see also Simpson*, 326 F.3d 230 at 235 (holding that plaintiff failed to state a claim for hostage taking under the TVPA since she did not allege

[8] The Complaint merely states the attack was done for the purpose of furthering the objectives of the government of Libya, but does not provide any allegations or otherwise elaborate on what those "government objectives" may be. *See* Complaint, ¶ 66.

purpose for her detention). Similar to *Price*, plaintiffs' claims for torture under the TVPA in the case before this Court should be dismissed for failing to allege a particular purpose for the alleged acts of torture by the defendants.

For the foregoing reasons, plaintiffs have failed to state a claim for torture under the TVPA. Specifically the Complaint fails to set forth sufficient facts which show that plaintiffs were in defendants' custody or physical control at the time of the incident; that the alleged acts satisfy the severity requirements for torture under the TVPA; and that the alleged acts were undertaken by defendants for a particular purpose that has been proscribed by the TVPA. Plaintiffs have clearly failed to satisfy the pleading requirements for claims of torture under the TVPA, and such claims for torture under the TVPA should be dismissed.

**(6) The Complaint Fails to State Claims under State Common Law and Statutory Law**

Should the Court find that plaintiffs have timely filed their Complaint, plaintiffs' nonspecific state common law and statutory law claims should nonetheless be dismissed against all of the Libya Defendants.

The Complaint alleges generic claims against all defendants for battery, assault, intentional infliction of emotional distress, civil conspiracy, and punitive damages under state common law; and claims for wrongful death, survival damages, as well as aiding and abetting under state common and statutory law. *See* Complaint, Counts I through VIII. The Complaint also generally provides the state of residency for each respective plaintiff, but does not include any choice of law provisions or allegations. Significantly, the Complaint does not specify the choice of applicable state common law upon which each respective plaintiff bases his or her damages. Moreover, plaintiffs do not identify ***any*** statutes upon which they base their "state

statutory law" claims. Plaintiffs have failed to identify with sufficient particularity the state law claims upon which they base their FSIA claims and the Complaint should be dismissed.

Plaintiffs may base claims for damages upon applicable state law in FSIA cases. *See Virtual Dev. & Defense, Int'l, Inc. v. Republic of Moldova*, 133 F. Supp. 2d 9, 15 (D.D.C. 2001) ("As a general matter, state substantive law is controlling in FSIA cases."). However, plaintiffs may not simply allege generic claims without specifying a specific source of law. *See Acree*, 370 F.3d at 59 ("[T]here is no support for the proposition that generic common law itself may furnish the cause of action. Rather, as in any case, a plaintiff proceeding under the FSIA must identify a particular cause of action arising out of a specific source of law."). An FSIA complaint must set forth state law claims with particularity. *See Pugh,* 2006 U.S. Dist. LEXIS 58033 at *53 (*citing Damarrell v. Islamic Republic of Iran*, 2005 U.S. Dist. LEXIS 5343, *4-5 (D.D.C. Mar. 29, 2005); *Welch v. Islamic Republic of Iran*, 2004 U.S. Dist. LEXIS 19512, *13-16 (D.D.C. Sept. 27, 2004)).

The D.C. Circuit in *Acree* dismissed plaintiffs' claims against the Republic of Iraq, the Iraqi Intelligence Service, and Saddam Hussein in his official capacity as President of Iraq on the grounds that plaintiffs failed to state a cause of action under specific state law. *Acree*, 370 F.3d at 60. In *Acree*, plaintiffs were 17 U.S. soldiers and their family members, who were held prisoners by Iraq during the Gulf War in 1991. In that case, plaintiffs relied solely upon § 1605(a)(7) of the FSIA and the Flatow Amendment as the source of liability notwithstanding the D.C. Circuit's prior ruling that these statutes do not confer a cause of action against the defendants. *Id*. at 59 ("neither § 1605(a)(7) nor the Flatow Amendment, nor the two together, creates a cause of action against foreign states themselves.") (*citing Cicippio,* 353 F.3d at 1033)). Prior to and at oral argument, plaintiffs were invited to offer alternative causes of action in order

maintain their suit against defendants. However, plaintiffs failed to assert alternative causes of action even when pressed by the court at oral argument. As a result, the D.C. Circuit dismissed plaintiffs' claims and stated, "[w]e therefore find no cause to remand this case to the District Court in order to allow appellees to amend their complaint to state a cause of action under some other source of law." *Acree*, 370 F.3d at 59-60 (*citing Cicippio*, 353 F.3d at 1036).

Similarly, in *Pugh*, plaintiffs' complaint set forth six counts for "(1) wrongful death, (2) survival damages, (3) economic damages, (4) intentional infliction of emotional distress, (5) loss of solatium and (6) loss of consortium" without specifying the specific state law upon which they were basing their claims for damages. *Pugh*, 2006 U.S. Dist. LEXIS 58033 at *8, n. 3. In that case, Judge Kennedy concluded that plaintiffs' claims of "generic common law torts" were insufficient and that an FSIA complaint must allege state law claims with specificity in order to survive a motion to dismiss. Judge Kennedy further explained that, "the D.C. Circuit, in *Cicippio-Puleo* and *Acree*, suggested that a plaintiff cannot rely on their submissions to identify that 'particular cause of action,' but rather must do so *in their complaint*." *Pugh*, 2006 U.S. Dist. LEXIS 58033 at *52 (emphasis in original).

Plaintiffs in the case before this Court have merely alleged generic common law and statutory state law claims. Plaintiffs have not specified the respective sources of state common law upon which they base their claims for battery, assault, intentional infliction of emotional distress, civil conspiracy, and punitive damages. Moreover, they have not set forth the specific statutes for wrongful death, survival damages, as well as aiding and abetting upon which they rely in asserting such claims. The Complaint fails to provide defendants with adequate notice of the claims which plaintiffs are pursuing in this litigation. *See e.g., Pugh*, 2006 U.S. Dist. LEXIS 58033 at *51, n. 19 (holding that complaint "failed to tie the claims of each and every one of the

Plaintiffs to a particular applicable state law," and vague references to the law of Virginia, Texas, Montana, and New York insufficient to survive motion to dismiss) (internal quotations omitted).

Since plaintiffs do not set forth with sufficient particularity the state law claims upon which they base their FSIA claims, their Complaint should be dismissed.

**C. Plaintiffs' Flatow Amendment and TVPA Claims Should be Dismissed against the Individual Defendants Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari due to Improper Service**

In addition to the grounds asserted above for dismissal of plaintiffs' Flatow Amendment and TVPA claims against the individual Libya Defendants (*see* Sections II (B)(3) & (4), above), these claims must be dismissed pursuant to Rule 12(b)(5) for improper service. Specifically, plaintiffs' claims under the Flatow Amendment and the TVPA against defendants Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari must be brought against them in their personal capacities. For these reasons, the service provisions of § 1608 of the FSIA do not apply to claims brought against individuals in their personal capacities. In order to maintain their claims under the Flatow Amendment and TVPA, plaintiffs must serve the individual Libya Defendants in a manner which is consistent with Rule 4(f) of the Federal Rules of Civil Procedure. Plaintiffs have not complied with the service provisions of Rule 4(f) and their claims against the individual Libya Defendants under the Flatow Amendment and TVPA should be dismissed due to improper service.

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1601 *et seq.*, provides the exclusive methods for effecting service of process on a foreign state, political subdivision, agency or instrumentality. *See* 28 U.S.C. § 1608. Section 1608(a) of the FSIA provides the methods for service of process upon a foreign state or political subdivision. In the "D.C. Circuit, the methods set forth in § 1608(a) are the sole channels through which service may properly be

effected on a foreign sovereign." *Doe v. State of Israel*, 400 F. Supp. 2d 86, 101 (D.D.C. 2005)
(*citing Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994)).
Similarly, 28 U.S.C. § 1608(b) provides the requirement for service upon an agency or
instrumentality of a foreign state. In matters brought against a foreign state, as well as a political
subdivision, agency or instrumentality of a foreign sovereign, the service requirements of § 1608
supersede the requirements for service of process under Rule 4 of the Federal Rule of Civil
Procedure.

An individual acting in his ***official capacity*** can qualify as an agency or instrumentality
of a foreign state for purposes of the service requirements of § 1608(b). *See Doe v. State of
Israel*, 400 F. Supp. 2d at 102. However, an individual foreign defendant sued in his ***personal
capacity*** is not subject to the service provisions of the FSIA. *Id*. at 102-103 ("As to the claims
against the individual Israeli defendants in their personal capacities, plaintiffs were required to
comply with the mandates of the Hague Convention, which, when it applies, is recognized as the
only acceptable way to serve foreign citizens.") (citation omitted)). In *Doe v. State of Israel*,
plaintiffs brought claims against high ranking Israeli government officials in both their official
and personal capacities under various laws including the Alien Tort Claims Act ("ATCA") and
TVPA, as well as the common law of various U.S. states. Plaintiffs served the individual
defendants sued in their personal capacities in the same manner as they served them in their
official capacities under § 1608(b). The court held that service made pursuant to the provisions
of the FSIA was improper with respect to an individual defendant sued in his personal capacity.
*Id*. at 102-103.

As discussed above, plaintiffs' claims under the Flatow Amendment and the TVPA
against defendants Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari must

be brought against them in their personal capacities. Accordingly, the service provisions of the FSIA do not apply to plaintiffs' Flatow Amendment and TVPA claims, but the service provisions of Rule 4(f) of the Federal Rules of Civil Procedure are controlling.[9] Rule 4(f) states:

> Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in a place not within any judicial district of the United States: (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or (2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice: (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or (B) as directed by the foreign authority in response to a letter rogatory or letter of request; or (C) unless prohibited by the law of the foreign country, by (i) delivery to the individual personally of a copy of the summons and the complaint; or (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or (3) by other means not prohibited by international agreement as may be directed by the court.

Plaintiffs have not served the individual Libya Defendants in a manner which is consistent with Rule (f).

A finding of insufficient service of process is appropriate where the plaintiff fails to effect service ***on each defendant*** in accordance with the Federal Rules of Civil Procedure or the FSIA, if applicable. *See* Fed. R. Civ. P. 12(b)(5). A complaint may be dismissed for ineffective service of process pursuant to Rule 12(b)(5) of Federal Rule of Civil Procedure if the plaintiff fails to establish that he or she has properly effectuated service pursuant to Rule 4 of the Federal

[9] Unlike in *Doe v. State of Israel*, Libya is not a party to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters (the Hague Service Convention), 20 U.S.T. 1361, or any other applicable multilateral treaties on service of process to which the United States is a party. Therefore, the service provisions of Rule 4 are applicable to service of the individual Libya Defendants served in their individual capacities.

Rules of Civil Procedure. *Lindsey v. United States*, 448 F. Supp. 2d 37, 42 (D.D.C. 2006) (*citing Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987). "[T]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Light*, 816 F.2d at 751 (internal quotation marks and citation omitted); *see also Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003).

Similar to the facts in *Doe v. State of Israel*, plaintiffs in the case before this Court did not serve the individual Libya Defendants personally pursuant to the service requirements for individuals sued in their personal capacities, namely the service provisions of Rule 4 of the Federal Rules of Civil Procedure. Rather, plaintiffs have attempted to effect service against ***all*** defendants in the manner prescribed in § 1608(a) of the FSIA. *See* Notice of Proof of Service Pursuant to § 1608(a)(3), Filing No. 4 herein.[10] However, in order to maintain their claims under the Flatow Amendment and TVPA, plaintiffs must bring these claims against the individual Libya Defendants in their personal capacities, and serve the individual Libya Defendants in a manner which is consistent with Rule 4. Plaintiffs have failed to do so.

Should this Court find that the Complaint states claims against the individual Libya Defendants in their personal capacities, plaintiffs' claims under the Flatow Amendment and TVPA must still be dismissed due to improper service.

[10] Plaintiffs' Notice of Proof of Service states in relevant part: "Pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608(a)(3), each of the defendants was served with a copy of the summons, Complaint, Notice of Suit, and administrative documents, together with a copy of each translated into Arabic, via DHL delivery 'to the head of the ministry of foreign affairs of the foreign state concerned.'" (citation omitted).

**D. Plaintiffs' Claims against Defendant, Mu'ammar <u>al-Qadhafi are Subject to the Head-of-State Doctrine</u>**

Plaintiffs' Complaint contends that defendant Mu'Ammar al-Qadhafi ("Qadhafi") is the "the leader of Libya." Complaint, ¶ 32. The Complaint further alleges that Qadhafi is subject to suit in the United States Courts pursuant the FSIA. Complaint, ¶ 3. Plaintiffs claim that Qadhafi, while undertaking acts within the scope of his office, caused the terrorist attack on December 27, 1985 and is therefore liable for the injuries suffered by plaintiffs as a result of the terrorist attack.[11] However, the FSIA does not apply to foreign heads of state. Rather, the determination as to whether a foreign head of state enjoys immunity from suit rests with the Executive Branch. The U.S. Attorney General has not determined whether the head-of-state doctrine applies to Qadhafi. Therefore, plaintiffs should be barred from proceeding with their claims against defendant Mu'Ammar al-Qadhafi subject the Executive Branch's decision regarding Qadhafi's immunity under the head-of-state doctrine.

The Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.*, was enacted by Congress in 1976. The FSIA provides foreign states with immunity from suit in courts of the United States or of any state subject to international agreements to which the United States was a party in 1976, as well as certain exceptions set forth in the FSIA. *See* 28 U.S.C. § 1604; *Wei Ye v. Jiang Zemin*, 383 F.3d 620, 625 (7th Cir. 2004). The responsibility for determining whether an exception to sovereign immunity for foreign states under the FSIA applies is left to the courts. *See United States v. Noriega*, 117 F.3d 1206, 1212 (11th Cir. 1997) ("[The FSIA] codified the State Department's general criteria for making suggestions of immunity and transferred the responsibility for case-by-case application of these principles from the Executive Branch to the Judicial Branch.").

[11] Plaintiffs do not allege any claims against defendant Mu'Ammar al-Qadhafi in his personal capacity; Qadhafi is sued in his official capacity only.

In contrast, the FSIA does not speak to a party's ability to bring suit in courts of the United States or of any state against foreign heads of state.  The Seventh Circuit has noted:

> The FSIA does not, however, address the immunity of foreign heads of states.  The FSIA refers to foreign states, not their leaders. []  The FSIA defines a foreign state to include a political subdivision, agency or instrumentality of a foreign state but makes no mention of heads of state.  28 U.S.C. § 1603(a).  Because the FSIA does not apply to heads of states, the decision concerning the immunity of foreign heads of states remains vested where it was prior to 1976--with the Executive Branch.

*Wei Ye*, 383 F.3d at 625 (footnote omitted) (*citing Noriega*, 117 F.3d at 1212).  In fact, the Executive Branch's suggestion of immunity is conclusive and not subject to judicial inquiry. *See Wei Ye*, 383 F.3d at 626 (*citing Spacil v. Crowe*, 489 F.2d 614, 617 (5th Cir. 1974) ("The precedents are overwhelming.  For more than 160 years American courts have consistently applied the doctrine of sovereign immunity when requested to do so by the executive branch. Moreover, they have done so with no further review of the executive's determination."); *Isbrandtsen Tankers, Inc. v. President of India*, 446 F.2d 1198, 1201 (2nd Cir. 1971) ("The State Department is to make [an immunity determination] in light of the potential consequences to our own international position.  Hence once the State Department has ruled in a matter of this nature, the judiciary will not interfere.") (additional citations omitted)).  "The obligation of the Judicial Branch is clear—a determination by the Executive Branch that a foreign head of state is immune from suit is conclusive and a court must accept such a determination without reference to the underlying claims of a plaintiff." *Wei Ye*, 383 F.3d at 626 (*citing Spacil*, 489 F.2d at 618).

In a separate case currently pending in the District Court for D.C. in which Qadhafi is a defendant, Judge Urbina of this Court has requested the position of the Executive Branch regarding whether Qadhafi is entitled to head-of-state immunity. *See Collett*, 362 F. Supp. 2d at 234.  Similarly, in *Pugh*, Judge Kennedy of this Court has held that plaintiffs cannot proceed

with their claims against the defendant Muammar Qadhafi in his official capacity as Libya's head of state until the Attorney General has had the opportunity to submit his views regarding the possibility of Qadhafi being granted head-of-state immunity. *Pugh*, 2006 U.S. Dist. LEXIS 58033 at *29 (“Given the important foreign policy considerations at play and because a federal court must satisfy itself that it has subject matter jurisdiction over a defendant before it proceeds, the court concludes that it must offer the Attorney General the opportunity to submit his views regarding the possibility of Qadhafi being granted head-of-state immunity in this case.”) (internal citations omitted)).

In both *Collett* and *Pugh*, the Attorney General has filed Statements of Interest of the United States in which the Executive Branch has deferred responding to the respective Courts’ invitations to submit views regarding the application of the head-of-state doctrine. In both cases, the Attorney General has stated that, “the United States remains in the midst of significant discussions concerning the course of U.S.-Libya relations”, and that, “it would serve the diplomatic and foreign policy interests of the United States to delay further responding the Court’s invitation . . .” *See* Statements of Interest of the United States, attached hereto as Exhibits D and E.

In the case before this Court, plaintiffs should be barred from proceeding with their claims against defendant, Mu’Ammar al-Qadhafi at this time. The U.S. Attorney General has not taken a position on whether the head-of-state doctrine applies to Qadhafi. The Court should therefore stay all pending claims against defendant Mu’Ammar al-Qadhafi, to the extent any such claims survive defendants’ statute of limitations, failure to state a claim, and improper service arguments, and until such time as the Executive Branch offers a directive on the applicability of the head-of-state doctrine to Qadhafi.

## III. CONCLUSION

For the foregoing reasons, defendants, Great Socialist People's Libyan Arab Jamahiriya, Libyan Internal Security, Libyan External Security, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari request that the Court enter an Order dismissing all of plaintiffs' claims against defendants with prejudice.

Respectfully, Submitted,

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

By: /s/ *Thomas J. Whalen*
Thomas J. Whalen, Esq. (Bar No. 208512)

/s/ *Mark A. Johnston*
Mark A. Johnston, Esq. (Bar No. 455764)
1747 Pennsylvania Ave., N.W.,
Twelfth Floor
Washington, D.C. 20006
(202) 659-6600

Wendy West Feinstein, Esq. (Pa ID No. 86698)
(*Admitted Pro Hac Vice*)
600 Grant Street
44th Floor
Pittsburgh, PA 15219
(412) 566-6000

Dated: December 5, 2006

Counsel for Defendants, Great Socialist People's Libyan Arab Jamahiriya, Libyan Internal Security, Libyan External Security, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari