IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF JOHN BUONOCORE III, ) <br> et al. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GREAT SOCIALIST PEOPLE'S LIBYAN ) <br> ARAB JAMAHIRIYA, et al. ) <br> ) <br> Defendants. ) | Case No. 1:06-cv-00727-GK |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Defendants, Great Socialist People's Libyan Arab Jamahiriya, Libyan Internal Security, Libyan External Security, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari (the "Libya Defendants"), by undersigned counsel, respectfully submit the following Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss and state as follows:

**I.   INTRODUCTION**

This case arises from a terrorist attack at the Leonardo da Vinci Airport in Rome, Italy on December 27, 1985 (the "terrorist attack"). The alleged facts of the incident are set forth in great detail in Defendants' Motion to Dismiss and in plaintiffs' Opposition thereto.[1] In summary,

---

[1] Plaintiffs' Opposition contains nearly ten pages of "facts", the majority of which are irrelevant to the legal arguments raised in the Libya Defendants' Motion, in attempt to elicit sympathy from the Court for the victims of the terrorist attack. The nature and specifics of the terrorist attack are not relevant to the arguments raised in Defendants' Motion and are not at issue at this juncture of this litigation. Moreover, Plaintiffs' statement of facts contains citations to the Affidavits of Khalid Ibrahim and Mustafa Badra (Pl.'s Exhibits 4 and 5, respectively) which have been attached to their Opposition in support of their claims. However, Defendants Motion to Dismiss challenges the sufficiency of the allegations contained in the Complaint on legal grounds only, and the Court in deciding Defendants' Motion should not consider any facts outside of those raised in the Complaint. The Affidavits of Khalid Ibrahim and Mustafa Badra do not contain any facts which are relevant to Defendants Motion. Accordingly, the Court should not consider the Affidavits of Khalid Ibrahim and Mustafa Badra in ruling upon Defendants' Motion.

Plaintiffs are U.S. citizens who were injured in the terrorist attack and individuals who represent the estates of U.S. citizens who were killed during the 1985 attack. Plaintiffs allege that four terrorists from the Abu Nidal Organization ("ANO"), acting under the instruction and/or control of the Libya Defendants, carried out the attack.

The Complaint alleges that funding and support for the attack were provided by the government of Libya. Plaintiffs have alleged that the following Libya Defendants provided support for and sponsored ANO in carrying out the attack: Great Socialist People's Libyan Arab Jamahiriya ("Libya"), Libyan Internal Security ("LISO"), one of Libya's intelligence services; Libyan External Security ("LESO"), one of Libya's intelligence services; Mu'Ammar Al-Qadhafi ("Qadhafi"), the leader of Libya; Abdallah Al-Sanusi, the head of LISO; and Ibrahaim Al-Bishari, the head of LESO. Plaintiffs allege that each defendant rendered material support for the attack and that the Libya Defendants were directly involved in the attack.

Plaintiffs allege unspecified state common law claims for battery, assault, and civil conspiracy; claims for intentional infliction of emotional distress, including solatium, under the "Flatow Amendment", 28 U.S.C. § 1605 note, and state common law; claims for wrongful death, survivorship, as well as aiding and abetting under state common and statutory law. Plaintiffs further seek punitive damages under both the Flatow Amendment and state common law. The Complaint contends that the Libya Defendants are subject to suit in the United States District Courts pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 29 U.S.C. § 1605(a)(7) and unspecified "related statutes." Complaint, ¶¶ 2-3.

On December 5, 2006, Defendants filed a Motion to Dismiss all claims against them with prejudice. Defendants moved for dismissal on the grounds that Plaintiffs' claims are barred by the statute of limitations under the FSIA; that this Court lacks personal jurisdiction over

2

Defendants, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari; that this Court lacks subject matter jurisdiction under the FSIA; and for improper service. In addition, Plaintiffs' should be barred from proceeding with any claims against Defendant Mu'Ammar Al-Qadhafi at this time under the head-of-state doctrine.

The Complaint should also be dismissed because it fails to state a claim against the Libya Defendants. Specifically, Plaintiffs fail to state claims against the Libya Defendants under both the Flatow Amendment and the TVPA. In addition, Defendants' Motion is filed on the grounds that the Complaint fails to state valid claims for "torture" under the TVPA and fails to state claims under state common and statutory law. Plaintiffs have also failed to assert valid claims for punitive damages against the Libya Defendants.

On January 19, 2007, plaintiffs filed a Memorandum of Law with Points and Authorities in Opposition to Libyan Defendants' Motion to Dismiss. In their Opposition, Plaintiffs contend that they filed their Complaint within the applicable statute of limitations. Specifically, Plaintiffs contend that the equitable tolling provision of 28 U.S.C. § 1605(a)(7) mandates that the 10-year statute of limitations under the FSIA did not begin to run until the enactment of the 1996 Amendment to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1601 *et seq.*, on April 24, 2006. Plaintiffs further argue that the filing of their Complaint on April 21, 2006, **more than 20 years** after the alleged incident and **nearly 10 years** after any impediment to suit was lifted was reasonable. Plaintiffs' arguments are inconsistent with well established principles of equitable tolling and are without merit.

Plaintiffs' Opposition further contends that the Court has jurisdiction over Defendants Al-Sanusi and Al-Bishari; that the Complaint sets forth claims under state common and statutory law; that the Complaint states sufficient claims against the individual defendants under the

3

Flatow Amendment; and that the head-of-state doctrine does not apply in this case. As shown below and in Defendants' Motion, the Court should reject Plaintiffs' arguments.

Finally, Plaintiffs contend in their Opposition that they have not pled substantive causes of action under the Torture Victims Protection Act of 1991 ("TVPA"), 28 U.S.C. § 1350 note, but that Plaintiffs reliance upon the TVPA is for jurisdictional purposes only as it relates to the waiver of sovereign immunity. Plaintiffs argue that Defendants have "misconstrued" their Complaint in this regard. Although the underlying purpose for Plaintiffs' reliance upon the TVPA is at best ambiguous given the wording of their Complaint, both parties are in agreement that Plaintiffs have not stated a cause of action under the TVPA. *See* Brief in Opp., p. 18 ("The Defendants' argument with respect to the ability to state a claim under the TVPA is irrelevant because the Plaintiffs have not attempted to do so."). Similarly, Defendants' arguments regarding the definition of "torture" and "extrajudicial killing" were not raised to dispute the Court's jurisdiction over this case, but only to challenge any substantive claims raised by plaintiffs under the TVPA. *See* Brief in Opp., p. 19. Therefore, there is no dispute concerning Plaintiffs' reliance upon the TVPA.[2]

For the reasons set forth below, as well as those stated in Defendants' Motion to Dismiss, the Court should dismiss Plaintiffs' claims against Defendants with prejudice.

---

[2] In their Opposition, Plaintiffs state "The Libyan Defendants do not argue that the Plaintiffs' facts as alleged are untrue and essentially concede the facts as recited." Brief in Opp., p. 19. This argument is completely without merit. As Plaintiffs concede, the Libya Defendants have challenged the legal sufficiency of the Plaintiff's claims only in filing their Motion to Dismiss. Although Defendants have not challenged the factual allegations of the Complaint in contesting the jurisdiction of this Court, it does not follow that Defendants have "essentially concede[d] the facts as recited." *See e.g., Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (It is well settled that a Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. At the Rule 12(b)(6) stage, the court does not assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.). To the contrary, Defendants will respond to the factual allegations of the Complaint only if the Court allows plaintiffs to proceed with their claims.

4

## II.     ARGUMENT

### A.     Plaintiffs' Complaint Should be Dismissed Because it was not Filed within the Applicable Statute of Limitations

Defendants' primary argument in their Motion to Dismiss is that Plaintiffs' claims are barred by the applicable statute of limitations.  The Complaint was filed on April 21, 2006, *more than 20 years* after the alleged incident.  The doctrine of equitable tolling does not apply to the facts of this case, since Plaintiffs can prove no facts which would warrant their delay of *nearly ten years* in filing suit after any impediment to filing suit was removed.  Plaintiffs' claims are time-barred and the entire Complaint should be dismissed with prejudice.  Defendants maintain that their arguments with respect to the statute of limitations and equitable tolling are *dispositive of all claims against all defendants* and that the Court need only address these issues in dismissing the Complaint.

In their Opposition, Plaintiffs argue that the 10 year statute of limitations under the FSIA did not begin to run until the 1996 enactment of 28 U.S.C. § 1605(a)(7) due to the equitable tolling provision of 28 U.S.C. § 1605(f).  In the alternative, Plaintiffs argue that filing their Complaint nearly ten years after any impediment to filing suit was removed, and more than 20 years after the alleged incident occurred was reasonable.  Plaintiffs' arguments are completely without merit.

It is well settled that the Plaintiffs bear the burden of proving that equitable tolling should apply.  *See, Acre v. Garcia*, 434 F.3d 1254 (11th Cir. 2006) and *U.S. v. Saro*, 252 F.3d 449, 455 n. 7 (D.C. Cir. 2001).  It is also well settled that equitable tolling does not automatically extend the statute of limitations and even "where a plaintiff establishes circumstances justifying equitable tolling, the plaintiff is given extra time only if he needs it."  *Vine v. Republic of Iraq*,

459 F.Supp.2d 10, *27 (D.D.C. 2006). *See also Phillips v. Heine*, 984 F.2d 489 (D.C. Cir. 1993).

Plaintiffs would have this Honorable Court insert into the FSIA words and meanings that Congress did not include or intend. The 1996 amendment to the FSIA, on which the Plaintiffs rely, added Section 1605(a)(7) providing a waiver of immunity for state sponsors of terrorism in claims for money damages arising out of personal injury to or death of United States citizens as a result of a terrorist act. Congress provided for a lengthy statute of limitations for claims under Section 1605(a)(7) and expressly stated that equitable tolling principles apply. The language chosen by Congress is straightforward: "No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period." 28 U.S.C. § 1605(f).

Notably, Congress did not write the first sentence of Section 1605(f) to say what the Plaintiffs would like the statute to provide. Congress could have easily written that the action must be commenced not later than "10 years after the cause of action arose or 10 years after the enactment of this statute, whichever is later." This proposition is nowhere in the statute or the legislative history of the statute. Also telling is that Congress did not start the running of the statute of limitations when the "cause of action accrued." Instead, Congress states simply that the 10 year statute of limitations period begins to run when the cause of action arose and that principles of equitable tolling shall apply.

The terms "equitable tolling" and "principles of equitable tolling" have been used by courts, including the Supreme Court, to evaluate when a statute of limitations should be extended. The terms have consistently been used and interpreted in every Circuit to mean that a

plaintiff may bring a late claim in extraordinary circumstances and when there are circumstances out of the plaintiff's control that prohibit it from filing suit.[3]

In 1990, six years before the enactment of Section 1605(a)(7), the Supreme Court discussed equitable tolling principles in the context of a claim against the Department of Veterans Affairs. "We think that this case affords us an opportunity to adopt a more general rule to govern the applicability of equitable tolling in suits against the Government." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990). The Court determined that equitable tolling should apply in cases against a sovereign, as it does for private litigants. It then described under what limited circumstances federal courts have applied equitable tolling to extend a statute of limitations. "We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, **or** where the complainant has been induced or tricked by his adversary's misconduct into allowing the

---

[3] *See e*.g., *Benitez-Pons v. Puerto Rico*, 136 F.3d 54, 61 (1st Cir. 1998) (discussed the following criteria for the application of equitable tolling: (1) the lack of actual notice of the filing requirement; (2) the lack of constructive notice of the filing requirement; (3) the diligence in pursuing one's rights; (4) the absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the filing requirement.); *de Casenave v. United States*, 91 F.2d 11 (1st Cir. 1993) (quoting *Irwin*: "Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."); *Veltri v. Building Service 32B-J Pension Fund*, 393 F.3d 318 (2nd Cir. 2004) (Statutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing.); *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3rd Cir. 1999) (Equitable tolling applicable when defendant has actively misled the plaintiff respecting the plaintiff's cause of action, plaintiff in some extraordinary way has been prevented from asserting his or her rights, or where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. Plaintiff must "exercise due diligence in preserving his claim." Equitable tolling is an extraordinary remedy which should be extended only sparingly.); *Johnson v. United States Postal Serv.*, 64 F.3d 233, 238 (6th Cir. 1995) (*quoting Irwin* for proposition that "equitable tolling was not appropriate where a litigant failed to meet a deadline as a result of 'garden variety' neglect."); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990) (equitable tolling does not bring about an automatic extension of the statute of limitations; if tolling applies, it will only toll the statute for a reasonable time.); *Motley v. United States*, 295 F.3d 820, 824 (8th Cir. 2002) (Because statutes of limitations protect important interests of certainty, accuracy, and repose, equitable tolling 'is an exception to the rule, and should therefore be used only in exceptional circumstances.); *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (Federal courts have applied the doctrine of equitable tolling in two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.); *Benge v. United States*, 17 F.3d 1286, 1288 (10th Cir. 1994) (Equitable tolling of a statute means only that the running of the statute is suspended, not that the limitations period begins over again.).

filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Id.* at 96 (emphasis added).

The plaintiff in *Irwin* had 30 days to file suit following the receipt of notification from the EEOC. The plaintiff's counsel's office received the notice, but counsel was out of the country. Counsel personally received the notification 15 days later. The complaint was filed 29 days after the counsel personally received the notification, but 44 days after the notice was received at his office. The Supreme Court determined that, although equitable tolling does apply in cases against the government, it was not justified in this case and the complaint was not timely filed. "[T]he principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect." *Id.*

In that 1990 decision, the Supreme Court described principles of equitable tolling and the limited application of equitable tolling. In 1993, the District of Columbia Circuit similarly discussed equitable tolling principles and their limited application in *Phillips v. Heine*, 984 F.2d 489 (D.C. Cir. 1993). The *Phillips* decision, which is discussed at length in the Libya Defendants' Motion to Dismiss, described how courts in this Circuit should apply principles of equitable tolling. "[T]olling does not bring about an automatic extension of the statute of limitations by the length of the tolling period. It gives the plaintiff extra time *only* if he needs it. If the plaintiff doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations, which after all exists to advance important interests in evidentiary accuracy and repose. ***The purposes of the doctrine are fully achieved if the court extends the time for filing by a reasonable period after the tolling circumstance is mended.***" *Id*. at 492 (emphasis added).

*Irwin* and *Phillips* are binding on this Court. Plaintiffs attempt to distinguish *Phillips* in two ways: (i) because it was decided before the enactment of Section 1605(a)(7) and (ii) because it was rendered in a case regarding the Death on the High Seas Act (DOHSA). Neither of these arguments is persuasive.

On the contrary, the fact that *Irwin* and *Phillips* were decided before the enactment of Section 1605(a)(7) shows that Congress was aware of the principles of equitable tolling as determined by two of the highest Courts of the Land.

It is without question that Congress was aware of the earlier cases, such as *Irwin* and *Phillips*, describing and carefully applying equitable tolling when it chose that language in its 1996 amendments to the FSIA. As described in the Libya Defendants' Motion to Dismiss, the legislative history of the TVPA confirms that plaintiffs are required to be diligent and gives no support for the Plaintiffs' position that Congress intended to broaden the reach of equitable tolling in FSIA cases. The fact that *Phillips* was decided in 1993 and the context of a DOHSA case does not limit its applicability, nor does it alter the fact that it is binding on this Court on the issues of the meaning and application of the principles of equitable tolling. *Phillips* was about equitable tolling and not about the policies implemented in the Death on the High Seas Act. The Plaintiffs' request that this Court disregard all pre-1996 equitable tolling cases, including *Phillips*, because they fall before the enactment of Section 1605(a)(7) is wholly without basis. The D.C. Circuit's sound analysis of equitable tolling was known by Congress in 1996 and applies to this case.

Plaintiffs argue that equitable tolling operates in this case to give them a period of 10 years from the date of the enactment of Section 1605(a)(7) to file their Complaint. There is no substantive support in any case or in the legislative history for the Plaintiffs' position that they

9

have 10 years after the enactment of Section 1605(a)(7) to file their claims. The Plaintiffs rely on a quote from *Flatow*, but fail to acknowledge that the issue of the statute of limitations was not raised and was not analyzed by that court. *See Flatow v. Islamic Republic of Iran*, 999 F.Supp. 1, 23 (D.D.C. 1998). In fact, the *Flatow* complaint was filed just 2 years after the cause of action arose – well within the statute of limitations. Therefore, the dicta without analysis in a case in which the statute of limitations was not even an issue should not be followed by this Court. If this Court is inclined to follow any of its sister Courts' decisions, it should follow the reasoned analysis in *Vine*, which followed the binding *Phillips* decision.

In *Vine*, the Court analyzed the very issue that is before this Court – whether the doctrine of equitable tolling saves the complaint. Here, as in two of the three complaints in *Vine*, equitable tolling does not save the claim. In rejecting the argument of the plaintiffs in two of the complaints, the *Vine* court followed *Phillips*, held that the statute of limitations is not automatically extended and does not begin to run from the date of enactment of Section 1605(a)(7).

The *Vine* court did not agree with the plaintiffs' argument that the statute of limitations was automatically extended, finding that the plaintiffs' arguments and authority were not persuasive:

> the [2 groups of plaintiffs] cite a number of cases that assertedly stand for the proposition that Congress specifically allowed for the bringing of suits, absent tolling, up to ten years from the date of the enactment of the state sponsored terrorism exception, rather than ten years from the date the cause of action arose. The court notes that the overwhelming majority of the cases cited involve default judgments, for which any statute of limitations argument was necessarily waived. In only three of those cases was the statute of limitations even mentioned, and those reference are dicta given the procedural posture of the case. In one of the two cases cited by plaintiffs that was not decided by default, the defendant failed to raise the statute of limitations defense and therefore waived it as

10

> well. Finally, in the sole disputed matter cited by plaintiffs in which the statute of limitations was raised, the court recognized that the statute of limitations began to run at the time the underlying acts occurred, but were tolled until immunity was waived.

459 F.Supp.2d 10, n. 9 (internal citations omitted.) The *Vine* court followed *Phillips* and held that "the holding in *Phillips* – that equitable tolling . . . merely ensures that the plaintiff is not, by dint of circumstances beyond his control, deprived of a reasonable time in which to file suit." 459 F.Supp.2d at 34 (internal quotations omitted.)

As the *Vine* court recognized, ***it is the law of this Circuit that equitable tolling will only extend the limitations period for a reasonable period of time***. *See Phillips*. Had Congress intended a different result, it could have easily said so.

The burden of demonstrating that a time period extended by equitable tolling is reasonable falls squarely on the shoulders of the party seeking the extension. *Irwin*, 498 U.S. at 96. Plaintiffs cannot meet their burden. Indeed, the Plaintiffs attempt to convince this Court that there is an automatic 10 year extension from the enactment of Section 1605(a)(7) because they cannot meet their burden of showing reasonableness.

The Plaintiffs have not and cannot present facts that demonstrate that 10 years from the enactment of Section 1605(a)(7) is a reasonable time for them to file suit. In their Amended Complaint and in their Brief in Opposition, Plaintiffs admit that they had access to information and facts allegedly supporting their claims as early as 1988 – when the terrorist who participated in the hijacking was convicted in Italy. *See* Brief in Opp., p. 6, Complaint ¶¶ 48-51. In addition, the exhibits submitted by the Plaintiffs with their Brief in Opposition demonstrate that information was available well before the enactment of Section 1605(a)(7). If, as Plaintiffs

incorrectly argue, they could not file this case until after Section 1605(a)(7) was enacted, then they could have done so shortly thereafter.

Notably, Plaintiffs make no argument as to why they had to wait until April 21, 2006 – just 3 days before the 10 year anniversary of the enactment of Section 1605(a)(7) - to file their Complaint. There is absolutely no factual support or even argument presented by the Plaintiffs that 10 years after the enactment of Section 1605(a)(7), and 20 years after the cause of action arose, is a *reasonable time* to bring the claims. Instead, Plaintiffs rely only on their mistaken belief that the statute of limitations is automatically extended by equitable tolling for 10 years after the date of enactment. As support for this faulty proposition, the Plaintiffs – like the unsuccessful plaintiffs in *Vine* – rely on dicta from a sister District Court and ignore the binding precedent in this Circuit governing the application of equitable tolling.

In this Circuit, it is the Plaintiffs' burden to show that equitable tolling applies and that the time period was reasonable. Plaintiffs have completely failed to meet their burden. Moreover, Plaintiffs cannot meet their burden because there is no set of facts that would support the position that 10 years after the enactment of Section 1605(a)(7) is a reasonable time. Therefore, all of the Plaintiffs' claims are time barred and the Libya Defendants' Motion to Dismiss should be granted.

   **B.**   **Plaintiffs Cannot State a Valid Claim against Defendant Abdallah Al-Sanusi**

To the extent that Plaintiffs' claims survive Defendants' statute of limitations and equitable tolling arguments, the Complaint also fails to state a claim against Defendant Abdallah Al-Sanusi. As stated in Defendants' Motion, Abdallah Al-Sanusi was not the head of, nor did he have any connection with either LISO or LESO at any time. Plaintiffs have not shown otherwise.

In their Opposition, Plaintiffs contend that Defendants Motion should have been brought under Fed. R. Civ. P. 12(b)(1) rather than under Rule 12(b)(6).  Brief in Opp., p. 28.  Plaintiffs contend that Defendants' arguments with respect to Major Al-Sanusi challenge the factual underpinnings of the relevant exception to sovereign immunity.  In fact, Defendants' Motion challenges both the factual underpinnings and the legal sufficiency of the Complaint for this particular claim.  Defendants have shown that Plaintiffs' conclusory, unsupported, and incorrect allegations against Abdallah Al-Sanusi are insufficient to state a claim against him.  The plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Bell v. Executive Comm. of the United Food and Commercial Workers Pension Plan for Employees*, 191 F. Supp. 2d 10, 15 (D.D.C. 2002) (*quoting In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1442 (D.C. Cir. 1989) and *Conley v. Gibson*, 355 U.S. 41, 45-46, (1955)).

Therefore, Plaintiffs' allegations against Abdallah Al-Sanusi should be dismissed with prejudice pursuant to ***both*** Rule 12(b)(1) and 12(b)(6).

### C. Plaintiffs Cannot State a Valid Claim against Defendant Ibrahaim Al-Bishari or his Estate

The Complaint also fails to state a claim against Defendant Ibrahaim Al-Bishari.  As shown in Defendants' Motion, Ibrahaim Al-Bishari died in a car accident on September 13, 1997.  In their Opposition, Plaintiffs request leave of court to "amend their Complaint to substitute Defendant Al-Bishari's estate as a defendant in accordance with the Federal Rules of Civil Procedure."  Brief in Opp., p. 31.  However, Plaintiffs have provided no support for the proposition that the estate of a government official may be liable for acts undertaken by the deceased official within the scope of his official duties.  Plaintiffs' Complaint clearly alleges that

all acts undertaken by Ibrahaim Al-Bishari were within the scope of his official duties. Complaint, ¶ 34. Plaintiffs indeed have not moved to amend their Complaint in this regard.

Similar to their allegations against Abdallah Al-Sanusi and for the same reasons discussed above, Plaintiffs' claims against Ibrahaim Al-Bishari should be dismissed with prejudice pursuant to **both** Rule 12(b)(1) and 12(b)(6).

### D.    The Head-of-State Doctrine Applies to Defendant, Mu'ammar al-Qadhafi

Plaintiffs incorrectly state in their Opposition that "[t]he Defendants argue that Defendant Qadhafi is immune from suit as the leader of Libya because of the Head-of-State Doctrine." Brief in Opp., p. 53. Rather, the Libya Defendants have merely requested that this Court stay all claims against Defendant, Mu'ammar al-Qadhafi, until such time as the Executive Branch makes a determination with respect to the applicability of the doctrine to Qadhafi. See Brief, pp. 34-36.

As shown in Defendants' Motion, in two separate cases currently pending in the District Court for D.C. in which Qadhafi is a defendant, Judge Urbina and Judge Kennedy of this Court have requested the position of the Executive Branch regarding whether Qadhafi is entitled to head-of-state immunity. *See Collett v. Socialist Peoples' Libyan Arab Jamahiriya*, 362 F. Supp. 2d 230, 234 (D.D.C. 2005); *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 2006 U.S. Dist. LEXIS 58033, *29 (D.D.C. 2006). In both cases, the U.S. Attorney General has filed Statements of Interest of the United States in which the Executive Branch has deferred responding to the respective Courts' invitations to submit views regarding the application of the head-of-state doctrine.

Plaintiffs concede in their Opposition that "in cases where the Executive Branch makes an express determination that a foreign sovereign should be immune from suit in U.S. courts, that conclusion is determinative." Brief in Opp., p. 56 (*citing Doe v. State of Israel*, 400 F. Supp. 2d

14

86, 110 (D.D.C. 2005).  Therefore, any determination by the U.S. Attorney General in *Collett* or *Pugh* would be binding upon this Court.  Defendants in the case at bar request that the Court stay all pending claims against Qadhafi consistent with the rulings of Judge Urbina and Judge Kennedy in *Collett* and *Pugh*, respectively.  Permitting Plaintiffs in the instant action to proceed with their claims against Qadhafi prior to the Executive Branch's determination of the applicability of the head-of-state doctrine to Qadhafi would be unduly burdensome.  Defendant Qadhafi should not be required to take on the heavy burden of defending himself against claims for which he may be immune.

      Moreover, filings by the U.S. Attorney General in *Collett* and *Pugh* make clear that the issue of Qadhafi's immunity is tied to ongoing talks between the United States and Libya concerning the normalization of relations.  In both cases, the Attorney General has stated that, "the United States remains in the midst of significant discussions concerning the course of U.S.-Libya relations", and that, "it would serve the diplomatic and foreign policy interests of the United States to delay further responding the Court's invitation . . ."  *See* Statements of Interest of the United States, attached to Defendants' Motion as Exhibits D and E.  The question of whether Qadhafi is entitled to immunity under the head-of-state doctrine should be made by the U.S. Attorney General at the appropriate time with consideration for the diplomatic and foreign policy interests of the United States.  *See e.g., Isbrandtsen Tankers, Inc. v. President of India*, 446 F.2d 1198, 1201 (2nd Cir. 1971) ("The State Department is to make [an immunity determination] in light of the potential consequences to our own international position.  Hence once the State Department has ruled in a matter of this nature, the judiciary will not interfere.") (additional citations omitted)).

For the foregoing reasons, Defendants respectfully request that the Court stay all pending claims against Qadhafi until such time as the Executive Branch makes a determination with respect to the applicability of the head-of-state doctrine to Qadhafi.

### E.    **Plaintiffs Did Not Properly Serve the Individual Defendants.**

The Plaintiffs argue that they properly served all of the Libya Defendants pursuant to § 1608(a)(3). Brief in Opp., pp. 35-37. This does not satisfy the Plaintiffs' burden of establishing proper service on the individual Libya Defendants. The clear language of the statute mandates that the individual Libya Defendants be served pursuant to § 1608(b) because the individual defendants are considered agencies or instrumentalities of the foreign state. *See Jungquist v. Sheekh Sultan Bin Khalifa Al Nahyan*, 115 F.3d. 1020 (D.C. Cir. 1997); *Global Index, Inc. v. Mkapa*, 290 F. Supp.2d 108, 110 (D.D.C. 2003) (individuals who act in their official capacities on behalf of a foreign sovereign are considered agencies and instrumentalities of a foreign state.). Thus, the service requirements of 28 U.S.C. § 1608(b) apply to them and service upon them may only be accomplished pursuant to that provision.

The Plaintiffs assert that service upon all of the Libya Defendants was completed under 28 U.S.C. § 1608(a)(3) by delivery of the requisite documents for each defendant to the Libyan ministry of foreign affairs. While service in this manner may arguably be proper upon Libya, it is not proper service upon the individual Libya Defendants, Mu'ammar al-Qadhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari. There is no evidence in the record of this case that service was accomplished pursuant to any of the provisions of § 1608(b). Indeed, the Plaintiffs admit that they only served pursuant to § 1608(a)(3). Therefore, the Plaintiffs have failed to meet their burden that they have properly served the individual Libya Defendants. *See Lindsey v. United States*, 448 F. Supp. 2d 37, 42 (D.D.C. 2006) (*citing Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987). "[T]he party on whose behalf service is made has the burden of establishing its

16

validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Light*, 816 F.2d at 751 (internal quotation marks and citation omitted); *see also Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003).

### F. All Other Arguments in the Motion to Dismiss Are Incorporated.

The Libya Defendants incorporate and restate as if fully rewritten all arguments presented in their Motion to Dismiss.[4]

## III. CONCLUSION

For the foregoing reasons, as well as those set forth in defendants' Motion to Dismiss, defendants, Great Socialist People's Libyan Arab Jamahiriya, Libyan Internal Security, Libyan External Security, Mu'Ammar Al-Qadhafi, Abdallah Al-Sanusi, and Ibrahaim Al-Bishari request that the Court enter an Order dismissing all of plaintiffs' claims against defendants with prejudice.

---

[4] As discussed above, the Libya Defendants do not seek to advance any arguments with respect to substantive claims under the TVPA to the extent that Plaintiffs have conceded in their Opposition that they do not allege substantive claims under the TVPA. *See* p. 4, *supra*.

        Respectfully submitted,

        **ECKERT SEAMANS CHERIN
          & MELLOTT, LLC**

By:   /s/ *Wendy West Feinstein*
       Thomas J. Whalen. (Bar No. 208512)
       Mark A. Johnston. (Bar No. 455764)
       1747 Pennsylvania Ave., N.W.
       Twelfth Floor
       Washington, DC  20006
       (202) 659-6600

       Wendy West Feinstein. (Pa ID No. 86698)
       (Admitted *Pro Hac Vice*)
       U.S. Steel Tower, 44th Floor
       600 Grant Street
       Pittsburgh, PA  15219
       (412) 566-6000

       Counsel for Great Socialist People's Libyan Arab
       Jamahiriya a/k/a LIBYA, Libyan Internal Security
       a/k/a al-'Amn al-Dhakhili, Libyan External Security
       a/k/a al-'Amn al-Khariji, Mu'ammar al-Qadhafi,
       Major Abdallah al-Sanusi, and Ibrahaim al-Bishari

Dated:  March 16, 2007

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a copy of the foregoing **Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss** was electronically filed and served this 16th day of March, 2007, to:

>Richard D. Heideman, Esq.
>Tracy Reichman Kalik, Esq.
>Heideman Nudelman & Kalik, P.C.
>1146 19th Street, NW
>5th Floor
>Washington, DC 20036
>
>Steven R. Perles, Esq.
>Perles Law Firm, PC
>1146 19th Street
>5th Floor
>Washington, DC 20036

                                            /s/ *Wendy West Feinstein*
                                               Wendy West Feinstein