UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
ESTATE OF JOHN BUONOCORE III, )
et al.,                       )
                              )
          Plaintiffs,         )
                              )
     v.                       )   Civil Action No. 06-727 (GK)
                              )
GREAT SOCIALIST PEOPLE'S      )
LIBYAN ARAB JAMAHIRIYA,       )
et al.,                       )
                              )
          Defendants.         )
_____)
```

## MEMORANDUM OPINION

This case arises out of the terrorist attack on the El Al and TWA ticket counters at Rome's Fiumicino Airport on December 27, 1985. The Plaintiffs are six United States nationals who were injured in the attack and survived and the estates and survivors of five United States nationals who were killed. They bring common law and statutory claims for personal injury and wrongful death against the governments of Libya and Syria; against three Libyan and Syrian intelligence agencies: Libyan Internal Security, Libyan External Security, and Syrian Air Force Intelligence; and against the following individuals: Mu'ammar al-Qadhafi, Libya's head of state, Major Abdallah al-Sanusi, Chief of Libyan Internal Security,

Ibrahim al-Bishari, Chief of Libyan External Security, and General Muhammed Al Khuli, Chief of Syrian Air Force Intelligence.[1]

This matter is before the Court on the Motion of Defendants Libya, Libyan Internal Security, Libyan External Security, al-Qadhafi, al-Sanusi, and al-Bishari (hereinafter referred to as "Libya") to Dismiss pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process, and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  [**Dkt. No. 17**].  Upon consideration of the Motion, Opposition, Reply, Surreply, the parties' arguments at the motions hearing held before the Court on June 12, 2007, and the entire record herein, and for the reasons stated below, Defendants' Motion to Dismiss is **granted**.

I.   **BACKGROUND**[2]

On the morning of December 27, 1985, four Palestinian terrorists associated with the Abu Nidal Organization stormed Rome's Fiumicino Airport.  The four terrorists split into two teams to attack passengers waiting at the El Al and TWA check-in

---

[1] The Clerk entered a default judgment against Defendants Syria, Syrian Air Force Intelligence, and General Al Khuli on October 4, 2006.  [Dkts. 9, 10, and 11].

[2] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff.  Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, the facts set forth herein are taken from Plaintiff's Complaint.

counters.  Firing assault rifles and throwing grenades, the terrorists killed thirteen individuals and wounded seventy-five others.  Three of the four assailants were themselves killed by El Al security agents.  The surviving terrorist, Khaled Ibrahim Mahmood, was later convicted for his role in the attack.  The Complaint alleges that Libya provided material support and assistance for this heinous act of terrorism.

## II. STANDARD OF REVIEW

"A motion to dismiss for failure to state a claim upon which relief can be granted is generally viewed with disfavor and rarely granted."  Doe v. U.S. Dep't of Justice, 753 F.2d 1092, 1102 (D.C. Cir. 1985) (internal citations omitted).  As stated above, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff.  Shear, 606 F.2d at 1253 (D.C. Cir. 1979).

## III. ANALYSIS

### A. The FSIA's Ten-Year Statute of Limitations Has Expired

Libya argues, inter alia, that Plaintiffs' claims are barred by the Foreign Sovereign Immunities Act's ("FSIA") ten year statute of limitations.  28 U.S.C. § 1605(f).  It contends that Plaintiffs' cause of action arose on December 27, 1985, more than twenty years before Plaintiffs filed their Complaint in April 2006.  Plaintiffs respond that the ten year statute of limitations was tolled until Congress enacted 28 U.S.C. § 1605(a)(7) on April 24, 1996, which

for the first time waived sovereign immunity for state sponsors of terrorism. They argue that the statute of limitations began to run on April 24, 1996 and therefore, had not expired when they filed their Complaint on April 21, 2006.

The statute of limitations provision for claims brought under 28 U.S.C. § 1605(a)(7) provides that

> No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

28 U.S.C. § 1605(f).

Judge Henry H. Kennedy, Jr., recently held in a well reasoned decision that Section 1605(f) does not provide an automatic ten year extension of time for plaintiffs to bring their claim after Congress enacted it in 1996. Vine v. Republic of Iraq, 459 F. Supp. 2d 10, 20-21 (D.D.C. 2006). In Vine, the court held that the plaintiffs' injuries arose in December 1990, when they were held as hostages by the Iraqi regime, and not in April 1996, when Congress amended the FSIA. Id. at 21. In so holding, the court drew a distinction between when a cause of action "arises" and when it "accrues." Id. "A claim 'arises' on the date that the action in question occurred, yet does not 'accrue' until a prior disability to suit is removed." Id. Under the FSIA, the key question is when the claim "arose," that is, when the events in question occurred.

Because the ten year statute of limitations had run in Vine, the court then looked to principles of equitable tolling, as directed by Section 1605(f). As explained by our Court of Appeals, "the doctrine of equitable tolling...shelters the plaintiff from the statute of limitations in cases where strict application would be inequitable." Phillips v. Heine, 984 F.2d 489, 491 (D.C. Cir. 1993). However, as the Court of Appeals emphasized, "[equitable] tolling does not bring about an automatic extension of the statute of limitations by the length of the tolling period." Id. at 492. Instead, the doctrine provides extra time to a plaintiff only if it is needed, and only for a reasonable period. Id. The Vine court applied these principles and held that the delay in filing the complaint in that case was not reasonable. 459 F. Supp. 2d at 22-23.

Plaintiffs in this case argue that the holding of Vine is inconsistent with the weight of authority in this Circuit. See Collett v. Socialist Peoples' Libyan Arab Jamahiriya, 362 F. Supp. 2d 230, 242 (D.D.C. 2005); Wyatt v. Syrian Arab Republic, 398 F. Supp. 2d 131, 145 (D.D.C. 2005); Peterson v. Islamic Republic of Iran, 264 F. Supp. 2d 46, 60 (D.D.C. 2003); Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 23 (D.D.C. 1998). Their argument is unpersuasive.

Two of these cases, Peterson and Flatow, involve default judgments where the statute of limitations issue was never fully

litigated.  <u>Peterson</u>, 264 F. Supp. 2d at 48; <u>Flatow</u>, 999 F. Supp. at 6.  While <u>Collett</u> and <u>Wyatt</u> do squarely address the issue, neither case provides more than a conclusory statement about Section 1605(f) and, most significantly, neither case even considers the Court of Appeals' decision in <u>Phillips</u>.  See <u>Collett</u>, 362 F. Supp. 2d at 242; <u>Wyatt</u>, 398 F. Supp. 2d at 145.  Consequently, this Court finds the detailed analysis of Section 1605(f) in <u>Vine</u> to be more compelling.

Plaintiffs also contend that <u>Phillips</u> is not controlling because it describes principles of equitable tolling applicable under the Death on the High Seas Act statutory scheme, 46 U.S.C. app. § 761 <u>et seq</u>.  They argue that Section 1605(f) should be liberally construed in light of Congress' intent to punish state sponsors of terrorism and provide just compensation for the victims of terrorism.

However, nothing in <u>Phillips</u> indicates that its treatment of equitable tolling was limited to the Death on the High Seas Act.  Indeed, the <u>Phillips</u> court, in discussing the contours of the equitable tolling doctrine, cited a number of cases involving a wide variety of statutes.  984 F.2d at 491 (citing <u>e.g.</u>, <u>Burnett v. New York Cent. R.R. Co.</u>, 380 U.S. 424 (1965) (Federal Employers' Liability Act); <u>Cada v. Baxter Healthcare Corp.</u>, 920 F.2d 446 (7th Cir. 1990) (Age Discrimination in Employment Act); <u>Hill v. Texaco, Inc.</u>, 825 F.2d 333 (11th Cir. 1987) (Petroleum Marketing Practices

Act); Timoni v. United States, 419 F.2d 294 (D.C. Cir. 1969) (National Service Life Insurance Act)). Given the wide variety of statutory schemes involved in these cases and the broad language used by the Court of Appeals, it is difficult to construe the Phillips court's discussion of equitable tolling as only limited to the Death on the High Seas Act.

Based on the general principles of equitable tolling enunciated in Phillips, the Court concludes that Plaintiffs' claims arose in December 1985, and that principles of equitable tolling permit suit for a reasonable period of time after Congress enacted 28 U.S.C. § 1605(a)(7) in April 1996, which waived sovereign immunity for Libya. Congress did not create "an automatic extension of the statute of limitations by the length of the tolling period." See Phillips, 984 F.2d at 492.

**B. The Complaint Was Not Filed Within a Reasonable Period of Time**

The Court must therefore determine if Plaintiffs filed suit within a reasonable period of time after enactment of Section 1605(a)(7). Plaintiffs initially offered two reasons for their delay in filing this lawsuit. First, they maintained that plaintiffs face difficult challenges in marshaling evidence in cases involving terrorist acts and that the passage of time improves the "accuracy of the evidence plaintiffs present." Pls.' Opp'n at 42 [Dkt. No. 22]. Second, they argued that the interests of American victims of terrorism in obtaining compensation for

their injuries outweighs any interests of the Defendants. Neither argument prevails.

While Plaintiffs' first argument may have merit in other cases, here they cannot point to any specific evidence that was necessary to the filing of their Complaint which was not already known and available in 1996. In fact, the Plaintiff's Complaint demonstrates that Plaintiffs were on notice of their claims by 1988, when the surviving terrorist, Khaled Ibrahim Mahmood, was convicted by an Italian court for his role in the attack. Compl. ¶ 49. [Dkt. No. 1]. Khaled admitted at his trial that the attack on the Rome Airport was "directly supported by the government of Libya," Id. ¶ 50, and that "Libya provided the terrorists...with weapons and passports." Id. ¶ 57.

Moreover, according to the Complaint, Libya did little to conceal its role in the Rome Airport Attack. For example, "on January 2, 1986, Qadhafi threatened to 'pursue U.S. citizens in their country and streets' in retaliation for any action taken by the United States in response to Libya's involvement in these terrorist attacks." Id. ¶ 83. A Libyan news agency celebrated the Rome Airport attack, among others, as "'heroic operations carried out by the sons of the martyrs of Sabra and Shatila....'" Id. ¶ 84.

The doctrine of equitable tolling "gives the plaintiff extra time *only* if he needs it." Phillips, 984 F.2d at 492 (emphasis in

8

original). Plaintiffs have made no showing that they needed ten additional years after 1996 to file their Complaint. As already noted, the Complaint itself indicates that Plaintiffs were put on notice of their claims against the Defendants by the late 1980s.

Plaintiffs' policy argument that their interests outweigh those of the Defendants also fails. Congress has already balanced the interests of American victims of terrorism against those of state sponsors of terrorism in the form of Section 1605(f). If a plaintiff does not need additional time, "there is no basis for depriving the defendant of the protection of the statute of limitations, which after all exists to advance important interests in evidentiary accuracy and repose." Phillips, 984 F.2d at 492. (internal quotation marks and citations omitted). Had Congress wished to strike a different balance, it could have done so.

On July 2, 2007, Plaintiffs sought leave to file a Supplemental Memorandum in response to a question raised by the Court during the June 12, 2007 Oral Argument. In it they argued that the ten year delay in filing their Complaint was not unreasonable because Vine had not been decided and no other decisions had held otherwise. Therefore, the statute should be tolled based on Plaintiffs' "excusable neglect." See Griffin v. Rogers, 399 F.3d 626, 637 (6th Cir. 2005).

The problem with Plaintiffs' argument is that Phillips, on which Vine, and this Court, rely was decided in 1993, three years

9

before enactment of Section 1605(f). Consequently, Plaintiffs were clearly on notice of the discussion of equitable tolling in that opinion and the broad language used by the Court of Appeals.[3]

While this Court has great personal sympathy for the grievous tragedies suffered by Plaintiffs, at the end of the day it will be up to the Court of Appeals whether Phillips does or does not apply to cases brought under the FSIA.

In sum, the Plaintiffs did not bring their Complaint within a reasonable amount of time after Congress waived sovereign immunity for state sponsors of terrorism in 1996. Accordingly, Plaintiffs' Complaint is time-barred and must be dismissed.

Because this issue is dispositive of the case, the Court need not examine Libya's other arguments.

## IV. CONCLUSION

For the foregoing reasons, Libya's Motion to Dismiss [**Dkt. No. 17**] is **granted** and the Complaint is **dismissed with prejudice**. An order shall issue with this Memorandum Opinion.

July 9, 2007
/s/
Gladys Kessler
United States District Judge

**Copies to: Attorneys of record via ECF**

---

[3] In view of the Court's disposition of the pending motion, there is no need for Libya to file a response to Plaintiffs' Supplemental Memorandum.