# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Estate of John Buonocore III                   :
by and through Cecil Buonocore                 :
521 Blackgates Road                            :
Wilmington, DE 19803-2448                      :
                                               :
and                                            :        Civil Action No. 06-00727 (GK)
                                               :
Cecil Buonocore                                :
521 Blackgates Road                            :
Wilmington, DE 19803-2448                      :
                                               :
and                                            :
                                               :
John Buonocore II                              :
521 Blackgates Road                            :
Wilmington, DE 19803-2448                      :
                                               :
and                                            :
                                               :
Todd Buonocore                                 :
921 Lovering Avenue                            :
Wilmington, DE 19806                           :
                                               :
and                                            :
                                               :
Salvatore Ferrigno                             :
37 Sibelius Road                               :
Newton, PA 18940                               :
                                               :
and                                            :
                                               :
Nancy Gage                                     :
160 Pinto Drive                                :
Edwards, CO 81632                              :
                                               :
and                                            :
                                               :
The Estate of Don Maland                       :
By and through Mark Maland                     :
1010 Church Street                             :
Elizabeth City, NC 27909-4608                  :
                                               :

and                                         :
                                            :
Ellen Maland                                :
4906 N. 29th Street              :
Arlington, VA 22207                         :
                                            :
and                                         :
                                            :
Jane Maland                                 :
2 Cedar Hill Drive                          :
Durham, NC 27713                            :
                                            :
and                                         :
                                            :
Mark Maland                                 :
1010 Church Street                          :
Elizabeth City, NC 27909-4608              :
                                            :
and                                         :
                                            :
The Estate of Einar Maland                  :
By and through Mark Maland                  :
1010 Church Street                          :
Elizabeth City, NC 27909-4608              :
                                            :
and                                         :
                                            :
The Estate of Grace Maland                  :
By and through Mark Maland                  :
1010 Church Street                          :
Elizabeth City, NC 27909-4608              :
                                            :
and                                         :
                                            :
Tim Maland                                  :
2500 East Second Street                     :
Reno, NV 89595                              :
                                            :
and                                         :
                                            :
The Estate of Charles Shinn                 :
By and through Beverly Mignerey             :
42015 North Club Pointe Drive               :
Anthem, AZ 85086                            :
                                            :
and                                         :

The Estate of Jeanne Shinn :
By and through Beverly Mignerey :
42015 North Club Pointe Drive :
Anthem, AZ 85086 :
 :
and :
 :
Jeanette Sweis :
4300 W. 91st Place :
Oak Lawn, IL 60453-1964 :
 :
and :
 :
The Estate of Michael Sweis :
By and through Jeanette Sweis :
4300 W. 91st Place :
Oak Lawn, IL 60453-1964 :
 :
and :
 :
The Estate of Aida Sweis :
By and through Jeanette Sweis :
4300 91st Place :
Oak Lawn, IL 60453-1964 :
 :
and :
 :
Sayel Sweis :
4300 W. 91st Place :
Oak Lawn, IL 60453-1964 :
 :
and :
 :
Saeid Sweis :
4300 W. 91st Place :
Oak Lawn, IL 60453-1964 :
 :
and :
 :
Juliet Sweis :
4300 W. 91st Place :
Oak Lawn, IL 60453-1964 :
 :
and :

3

The Estate of Elena Tommarello                 :
By and through Bruno Pepenella                 :
636 East McMurry Road                          :
McMurry, PA 15317                              :
                                               :
and                                            :
                                               :
Armando Pepenella                              :
119 Pier D                                     :
Naples, FL 34113                               :
                                               :
and                                            :
                                               :
Bruno Pepenella                                :
636 East McMurry Road                          :
McMurry, PA 15317                              :
                                               :
and                                            :
                                               :
Francesco Zerilli                              :
1959 E. Jefferson Ave.                         :
Suite 407                                      :
Detriot, MI 48207                              :
                                               :
and                                            :

Estate of Natasha Simpson                      :
by and through David Simpson                   :
2 University Plaza, Suite 109                   :
Hackensack, NJ 07601                           :

Victor Simpson                                 :
Piazza Garzioli, 5,                            :
Rome Italy 00186                               :
                                               :
and                                            :
                                               :
Daniella Simpson                               :
Piazza Garzioli, 5,                            :
Rome Italy 00186                               :
                                               :
and                                            :
                                               :
Michael Simpson                                :
Piazza Garzioli, 5,                            :
Rome Italy 00186                               :

4

Plaintiffs, :
:
:
v. :
:
:
Great Socialist People's Libyan :
Arab Jamahiriya a/k/a LIBYA :
Tripoli, LIBYA :
:
and :
:
Libyan Internal Security a/k/a :
al-'Amn al-Dhakhili :
Bab-al-Azizyeh :
Assur Road :
Tripoli, LIBYA :
:
and :
:
Libyan External Security a/k/a :
al-'Amn al-Khariji :
Bab-al-Azizyeh :
Assur Road :
Tripoli, LIBYA :
:
and :
:
Mu'ammar al- Qadhafi :
Supreme Leader of the Great Socialist :
People's Libyan Arab Jamahiriya :
Tripoli, LIBYA :
:
and :
:
Major Abdallah al-Sanusi :
Chief, Libyan Internal Security :
Bab-al-Azizyeh :
Assur Road :
Tripoli, LIBYA :
:
and :
:
Ibrahaim al-Bishari :
Chief, Libyan External Security :
Bab-al-Azizyeh :

Assur Road                              :
Tripoli, LIBYA                          :
                                        :
and                                     :
                                        :
SYRIAN ARAB REPUBLIC                    :
Damascus, SYRIA                         :
                                        :
and                                     :
                                        :
Syrian Air Force Intelligence           :
Kafar Susa Roundabout                   :
Damascus, SYRIA                         :
                                        :
and                                     :
                                        :
General Muhammed Al Khuli               :
Chief, Syrian Air Force Intelligence    :
Kafar Susa Roundabout                   :
Damascus, SYRIA                         :
                                        :
                                        :
                    Defendants   :
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . :

## **AMENDED COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

Plaintiffs bring this action pursuant to the provisions of 28 U.S.C. § 1602, *et seq*.

This action arises out of the injuries and deaths of John Buonocore III, Frederick Gage,

Don Maland, Charles Shinn, and Elena Tommarello, Natasha Simpson and the injuries of

Salvatore Ferrigno, Mark Maland, Jeanette Sweis, Michael Sweis, Saied Sweis, Jeanne

Shinn, Francesco Zerilli, Victor Simpson, and Michael Simpson, all of which resulted

from the terrorist attack at the Leonardo da Vinci Airport, a/k/a Fiumicino Airport

("Rome Airport") in Rome, Italy on December 27, 1985 ("Rome Airport Attack"), which

targeted the TWA and El Al check-in counters and was carried out simultaneously and in

conjunction and coordination with a similar attack at the Schwechat Airport outside of

6

Vienna, Austria ("Vienna Airport Attack"). Both the Rome Airport Attack and the Vienna Airport Attack were carried out by certain individuals acting under the instruction and/or control of the Defendants and/or utilizing the funding and support provided by the governments of Libya and Syria as state sponsors of terrorism and others who support terrorism, and to which actions the Defendants rendered material support and direct involvement. Plaintiffs state in support of their Complaint and allege as follows:

### JURISDICTION AND VENUE

1. Jurisdiction over the subject matter of this case arises under 28 U.S.C. §§ 1330 (a), 1331, 1332(a)(2) and 1605A or 28 U.S.C. § 1605(a)(7) in the alternative.

2. Defendants Great Socialist People's Libyan Arab Jamahiriya (hereinafter "Libya"), al 'Amn-al Dhakhili (hereinafter "Libyan Internal Security Agency"), al-'Amn al Khariji (hereinafter "Libyan External Security Agency"), Syrian Arab Republic (hereinafter "Syria"), and the Syrian Air Force Intelligence are subject to suit in the courts of the United States as sponsors of and participants in the ANO's activities pursuant to the Foreign Sovereign Immunities Act, as amended, (hereinafter "FSIA") 28 U.S.C. § 1605A or 28 U.S.C. § 1605(a)(7) in the alternative, and related statutes.

3. Defendants General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari are subject to suit in the courts of the United States pursuant to the FSIA, 28 U.S.C. § 1605A or 28 U.S.C. § 1605(a)(7) in the alternative, and related statutes.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

5.  Actions for wrongful death, personal injury and related torts perpetrated by foreign state sponsors of terrorism acting by and through their officials, employees and agents within the meaning of 28 U.S.C. § 1605A(a)(2)(A)(i) are unique causes of action arising out of the federal counter-terrorism statute(s), specifically §1605A(c), and state law.

## THE PARTIES

### A.    The Plaintiffs

6.  This action is brought by the Plaintiffs, by and through their counsel, in the individual capacity of each Plaintiff and, as appropriate, in the capacity of each as representative of the estate, for their own benefit, for the benefit of each particular estate, and for the benefit and on behalf of all those legally entitled to assert a claim under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, and state common law and statutory law.

### The Buonocore Family

7.  Plaintiff The Estate of John Buonocore III, is represented in this action by and through Cecil Buonocore, the Administrator of said Estate. John Buonocore III was, at the time of the acts alleged and throughout his lifetime, an American citizen and, at the time of his death, a citizen and resident of the State of Delaware. John Buonocore III was, at all pertinent times alleged herein, a victim of "torture" who was murdered by an act of "extrajudicial killing" as defined in Section 3 of the Torture Victims Protection Act of 1991 (hereinafter "TVPA"), 28 U.S.C. 1350.  He suffered "personal injury" and "death" as the result of Defendants' actions and terrorist acts and activities as required by 28 U.S.C. § 1605A) or 28 U.S.C. § 1605(a)(7) in the alternative.  Plaintiff The Estate of

John Buonocore III, by and through its Administrator, Cecil Buonocore, can sue and be sued in this Court.

8.  Plaintiffs Cecil Buonocore and John Buonocore II at all times relevant hereto are and were the natural parents of John Buonocore III. Cecil Buonocore and John Buonocore II are citizens of the United States of America who reside in the State of Delaware. Plaintiffs Cecil Buonocore and John Buonocore II can sue and be sued in this Court.

9.  Plaintiff Todd Buonocore at all times relevant hereto is and was the brother of Plaintiff John Buonocore III. Plaintiff Todd Buonocore is a citizen of the United States of America who resides in the State of Delaware. Plaintiff Todd Buonocore can sue and be sued in this Court.

### Salvatore Ferrigno

10. Plaintiff Salvatore Ferrigno is currently a United States citizen who resides in the State of Pennsylvania. Salvatore Ferrigno was, at all pertinent times alleged herein, a victim of "torture" as defined in the TVPA, 28 U.S.C. § 1350. He suffered "personal injury" caused by the Defendants' actions, terrorist acts and activities as defined in 28 U.S.C. § 1605A or 28 U.S.C. § 1605(a)(7) in the alternative . Plaintiff Salvatore Ferrigno can sue and be sued in this Court.

### Nancy Gage

11. Plaintiff Nancy Gage is a citizen of the United States of America who resides in the State of Colorado. Plaintiff Nancy Gage brings this action in her individual capacity as the sister of Frederick Gage and in her capacity as the person to whom the amount recovered for his wrongful death belongs. Frederick Gage was, at the time of the

acts alleged and throughout his lifetime, an American citizen and, at the time of his death, a resident and citizen of the State of Wisconsin. Frederick Gage was, at all pertinent times alleged herein, a victim of "torture" who was murdered by an act of "extrajudicial killing" as defined in Section 3 of the TVPA, 28 U.S.C. § 1350. He suffered "personal injury" and "death" resulting from Defendants' actions, terrorist acts and activities as required by 28 U.S.C. § 1605A or 28 U.S.C. § 1605(a)(7) in the alternative . Plaintiff Nancy Gage can sue and be sued in this Court.

### The Maland Family

12. Plaintiff The Estate of Don Maland, is represented in this action by and through Mark Maland.   Don Maland was, at the time of the acts alleged and throughout his lifetime, an American citizen and, at the time of his death, a resident and citizen of the State of Florida. At all pertinent times alleged herein, Don Maland was a victim of "torture" who was murdered by an act of "extrajudicial killing" as defined in Section 3 of the TVPA, 28 U.S.C. § 1350. He suffered "personal injury" and "death" resulting from Defendants' actions, terrorist acts and activities as required by 28 U.S.C. § 1605A. Plaintiff the Estate of Don Maland, by and through Mark Maland, can sue and be sued in this Court.

13. Plaintiff Mark Maland was, at the time of the acts alleged and throughout his lifetime, an American citizen who resides in the State of North Carolina. At all pertinent times alleged herein, Mark Maland was a victim of "torture" as defined in the TVPA, 28 U.S.C. § 1350. He suffered "personal injury" resulting from Defendants' actions, terrorist acts and activities as defined in 28 U.S.C. § 1605A or 28 U.S.C. § 1605(a)(7) in the alternative . Plaintiff Mark Maland is and was at all times relevant hereto the brother

of Don Maland. Mark Maland is a citizen of the United States of America who resides in the State of North Carolina. Plaintiff Mark Maland can sue and be sued in this Court.

14. Plaintiff The Estate of Einar Maland is represented in this action by Mark Maland. Einar Maland is and was at all relevant times hereto the father of Don Maland and Mark Maland. Einar Maland was, at the time of the acts alleged and throughout his lifetime, an American citizen and, at the time of his death, a resident and citizen of the State of Florida. Plaintiff The Estate of Einar Maland, by and through Mark Maland, can sue and be sued in this Court.

15. Plaintiff The Estate of Grace Maland is represented in this action by Mark Maland, Administrator of said estate. Grace Maland is and was at all relevant times hereto the mother of Don Maland and Mark Maland. Grace Maland was, at the time of the acts alleged and throughout her lifetime, an American citizen and, at the time of her death, a resident and citizen of the State of North Carolina. Plaintiff The Estate of Grace Maland, by and through its Administrator, Mark Maland, can sue and be sued in this Court.

16. Plaintiff Ellen Maland is and was at all times relevant hereto the sister of Don Maland and Mark Maland. Ellen Maland is a citizen of the United States of America who resides in the State of Virginia. Plaintiff Ellen Maland can sue and be sued in this Court.

17. Plaintiff Jane Maland is and was at all times relevant hereto the sister of Don Maland and Mark Maland. Jane Maland is a citizen of the United States of America who resides in the State of North Carolina. Plaintiff Jane Maland can sue and be sued in this Court.

11

18. Plaintiff Tim Maland is and was at all times relevant hereto the brother of Don Maland and Mark Maland. Tim Maland is a citizen of the United States of America who resides in the State of Nevada. Plaintiff Tim Maland can sue and be sued in this Court.

### The Shinn Family

19. Plaintiff The Estate of Charles Shinn, is represented in this action by Beverly Mignerey, the Personal Representative of said estate. Charles Shinn was, at the time of the acts alleged and throughout his lifetime, an American citizen and, at the time of his death, a resident and citizen of the State of Colorado. Charles Shinn was, at all pertinent times alleged herein, a victim of "torture" and "extrajudicial killing" as defined in Section 3 of the TVPA, 28 U.S.C. § 1350. He suffered "personal injury" and "death" resulting from Defendants' actions, terrorist acts and activities as required by 28 U.S.C. § 1605A or 28 U.S.C. § 1605(a)(7) in the alternative . Charles Shinn was at all times relevant hereto the husband of Jeanne Shinn. Plaintiff the Estate of Charles Shinn, by and through its Personal Representative, Beverly Mignerey, can sue and be sued in this Court.

20. Plaintiff The Estate of Jeanne Shinn, is represented in this action by Beverly Mignerey as the Personal Representative of said estate. Jeanne Shinn was, at the time of the acts alleged and throughout her lifetime, an American citizen and, at the time of her death, a resident and citizen of the State of Colorado. Jeanne Shinn was, at all pertinent times alleged herein, a victim of "torture" as defined in Section 3 of the TVPA, 28 U.S.C. § 1350. She suffered "personal injury" resulting from Defendants' actions, terrorist acts and activities as required by 28 U.S.C. § 1605A or 28 U.S.C. § 1605(a)(7) in the alternative . Jeanne Shinn was at all times relevant hereto the wife of Charles Shinn.

Plaintiff the Estate of Jeanne Shinn, by and through its Personal Representative, Beverly Mignerey, can sue and be sued in this Court.

### The Sweis Family

21. Plaintiff Jeanette Sweis is and was, at the time of the acts alleged and throughout her lifetime, an American citizen who resides in the State of Illinois. At all pertinent times alleged herein, Jeanette Sweis was a victim of "torture" as defined in the TVPA, 28 U.S.C. § 1350. She suffered "personal injury" resulting from Defendants' actions, terrorist acts and activities as required by 28 U.S.C. § 1605A or 28 U.S.C. § 1605(a)(7) in the alternative. Plaintiff Jeanette Sweis can sue and be sued in this Court.

22. Plaintiff The Estate of Michael Sweis, is represented in this action by Jeanette Sweis, Executor of said Estate. Michael Sweis was, at all relevant times alleged herein and throughout his lifetime, an American citizen and, at the time of his death, a resident and citizen of the State of Illinois. Michael Sweis was, at all pertinent times alleged herein, a victim of "torture" as defined in the TVPA, 28 U.S.C. § 1350. He suffered "personal injury" resulting from Defendants' actions, terrorist acts and activities as required by 28 U.S.C. § 1605 or 28 U.S.C. § 1605(a)(7) in the alternative A. Plaintiff The Estate of Michael Sweis, by and through its Executor, Jeanette Sweis, can sue and be sued in this Court.

23. Plaintiff The Estate of Aida Sweis, is represented in this action by Jeanette Sweis, Executor of said Estate. Aida Sweis is and was at all relevant times hereto the mother of Jeanette Sweis and the wife of Michael Sweis. Aida Sweis was, at the time of the acts alleged and throughout her lifetime, an American citizen and, at the time of her

death, a resident and citizen of the State of Illinois. Plaintiff the Estate of Aida Sweis, by

and through its Executor, Jeanette Sweis, can sue and be sued in this Court.

24. Plaintiff Saied Sweis is and was, at the time of the acts alleged and throughout

his lifetime, an American citizen who resides in the State of Illinois. At all pertinent

times alleged herein, Saied Sweis was a victim of "torture" as defined in the TVPA, 28

U.S.C. § 1350. He suffered "personal injury" resulting from Defendants' actions,

terrorist acts and activities as required by 28 U.S.C. § 1605A or 28 U.S.C. § 1605(a)(7)

in the alternative. Plaintiff Saied Sweis can sue and be sued in this Court.

25. Plaintiff Sayel Sweis is and was at all relevant times hereto the brother of

Jeanette Sweis, Saied Sweis, and Juliet Sweis. He is the son of Michael and Aida Sweis.

Sayel Sweis was, at the time of the acts alleged and throughout his lifetime, an American

citizen and a resident and citizen of the State of Illinois. Plaintiff Sayel Sweis can sue

and be sued in this Court.

26. Plaintiff Juliet Sweis is and was at all relevant times hereto the sister of

Jeanette Sweis, Saied Sweis, and Sayel Sweis. She is the daughter of Michael and Aida

Sweis. Juliet Sweis was, at the time of the acts alleged and throughout her lifetime, an

American citizen and a resident and citizen of the State of Illinois. Plaintiff Juliet Sweis

can sue and be sued in this Court.

### The Tommarello Family

27. Plaintiff The Estate of Elena Tommarello is represented in this action by

Bruno Pepenella. Elena Tommarello was, at all relevant times alleged herein, an

American citizen and, at the time of her death, a resident and citizen of the State of

Pennsylvania. Elena Tommarello was, at all pertinent times alleged herein, a victim of

14

"torture" and "extrajudicial killing" as defined in the TVPA, 28 U.S.C. § 1350.  She

suffered "personal injury" and "death" resulting from Defendants' actions, terrorist acts

and activities as required by 28 U.S.C. § 1605A or 28 U.S.C. § 1605(a)(7) in the

alternative.  Plaintiff the Estate of Elena Tommarello, by and through Bruno Pepenella,

can sue and be sued in this Court.

28. Plaintiff Armando Pepenella is and was at all times relevant hereto the son of

Elena Tommarello.  Armando Pepenella is a United States citizen who resides in the

State of Florida.  Plaintiff Armando Pepenella can sue and be sued in this Court.

29. Plaintiff Bruno Pepenella is and was at all times relevant hereto the son of

Elena Tommarello.  Bruno Pepenella is a United States citizen who resides in the State of

Pennsylvania.  Plaintiff Bruno Pennsylvania can sue and be sued in this Court.

### Francesco Zerilli

30. Plaintiff Francesco Zerilli is a permanent resident of the United States who

currently resides in the State of Michigan.  Francesco Zerilli was, at all pertinent times

alleged herein, a victim of "torture" as defined in the TVPA, 28 U.S.C. § 1350.  He was

shot during the attack, suffering "personal injury" caused by the Defendants' actions,

terrorist acts and activities as required by 28 U.S.C. § 1605A or 28 U.S.C. § 1605(a)(7) in

the alternative.  Plaintiff Francesco Zerilli can sue and be sued in this Court.

### The Simpson Family

31. Plaintiff, The Estate of Natasha Simpson, is represented in this action by and

through, David Simpson.    Natasha Simpson was, at the time of the acts alleged and

throughout her lifetime, an American citizen and, at the time of her death, a citizen of the

State of New York.  At all pertinent times alleged herein, Natasha Simpson was a victim

of "torture" who was murdered by an act of "extrajudicial killing" as required by Section

3 of the TVPA, 28 U.S.C. § 1350. She suffered "personal injury" and "death" resulting

from Defendants' actions, terrorist acts and activities as defined in 28 U.S.C. § 1605A or

28 U.S.C. § 1605(a)(7) in the alternative.

32. Plaintiff Victor Simpson was, at the time of the acts alleged and throughout

his lifetime, an American citizen. Victor Simpson currently resides in Rome, Italy. At

all pertinent times alleged herein, Victor Simpson was a victim of "torture" as defined in

the TVPA, 28 U.S.C. § 1350. He suffered "personal injury" resulting from Defendants'

actions, terrorist acts and activities as required by 28 U.S.C. § 1605A or 28 U.S.C. §

1605(a)(7) in the alternative. Plaintiff Victor Simpson is and was at all times relevant

hereto the father of Natasha Simpson. Natasha Simpson was a citizen of the United

States of America. Plaintiff Victor Simpson can sue and be sued in this Court.

33. Plaintiff Michael Simpson was, at the time of the acts alleged and throughout

his lifetime, an American citizen. Michael Simpson currently resides in Rome, Italy. At

all pertinent times alleged herein, Michael Simpson was a victim of "torture" as required

by the TVPA, 28 U.S.C. § 1350. He suffered "personal injury" resulting from

Defendants' actions, terrorist acts and activities as required by 28 U.S.C. § 1605A or 28

U.S.C. § 1605(a)(7) in the alternative. Plaintiff Michael Simpson is and was at all times

relevant hereto the brother of Natasha Simpson. Natasha Simpson was a citizen of the

United States of America. Plaintiff, Michael Simpson can sue and be sued in this Court.

34. Plaintiff, Daniella Simpson at all times relevant hereto is the natural mother of

Natasha Simpson and Michael Simpson, and the wife of Victor Simpson. Daniella

Simpson is a citizen of the United States of America who resides in Rome, Italy.

Plaintiff, Daniella Simpson can sue and be sued in this Court.

**B.    The Defendants**

35. Defendant Libya is a foreign state that has been designated a state sponsor of

terrorism pursuant to § 6(j) of the Export Administration Act of 1979, 50 U.S.C. App. §

2405, § 620(A) of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371, and section 40

of the Arms Export Control Act, from December 29, 1979 until 2006, and during the time

of the attack as required by 28 U.S.C. § 1605A(a)(2)(A)(i)(I). Libya at all times pertinent

to this action, provided material support and resources to theANO , and directly

participated in its terrorist activities. The ANO, at all times pertinent to this action, has

operated in, among other places, Libya, Iraq, Lebanon, and Syria, carrying out both

militant terrorist operations and a campaign of terrorism. This terrorist campaign

includes, but is not limited to, attacks in 20 countries, which have killed or injured almost

900 persons. Targets included persons in the United States, the United Kingdom, France,

Israel, and also moderate Palestinians, the Palestine Liberation Organization ("PLO") and

various other people and countries. Libya, through its actions caused the personal

injuries and deaths described above and below, within the meaning of 28 U.S.C. § 1605A

or 28 U.S.C. § 1605(a)(7) in the alternative,(, by providing ANO with funding, direction,

material support, encouragement, safe haven and training for its terrorist activities.

36. Defendant Syria is a foreign state that has been designated and remains

designated as a state sponsor of terrorism pursuant to section 60 of the Export

Administration Act of 1979, 50 U.S.C. App. § 2405, section 620(A) of the Foreign

Assistance Act of 1961, 22 U.S.C. § 2371, and section 40 of the Arms Export Control

Act, since December 29, 1979. Syria, at all times pertinent to this action, provided material support and resources to the ANO. Abu Nidal, at all times pertinent to this action, and to the present, has operated in, among other places, Libya, Iraq, Lebanon, and Syria, carrying out both militant terrorist operations and a campaign of terrorism. This terrorist campaign includes, but is not limited to, attacks in 20 countries, which have killed or injured almost 900 persons. Targets included persons in the United States, the United Kingdom, France, Israel, as well as moderate Palestinians, the PLO and various persons and other countries. Syria, through its actions caused the personal injuries and deaths described above , within the meaning of 28 U.S.C. § 1605A or 28 U.S.C. § 1605(a)(7) in the alternative, by providing ANO with funding, direction, support, encouragement, safe haven and/or training for its terrorist activities.

37. Defendant Libyan Internal Security ("LISO") is one of the Libyan intelligence services through which Libya supported and directed ANO, which caused the terrorist acts described below.

38. Defendant Libyan External Security ("LESO") is one of the Libyan intelligence services through which Libya supported and directed ANO, which caused the terrorist acts described below.

39. Defendant Mu'ammar al Qadhafi is the leader of Libya and performed acts within the scope of his office, which caused the terrorist acts described below.

40. Defendant Major Abdallah al-Sanusi was the head of the Libyan Internal Security Agency and performed acts within the scope of his office, which caused the terrorist acts described below.

41. Defendant Ibrahaim al-Bishari was the head of the Libyan External Security Agency and performed acts within the scope of his office, which caused the terrorist acts described below.

42. Defendant Syrian Air Force Intelligence is the Syrian intelligence services through which Syria sponsored Abu Nidal, which caused the terrorist acts described below.

43. Defendant General Muhammed al-Khuli was the chief of the Syrian Air Force Intelligence and performed acts within the scope of his office, which caused the terrorist acts described below.

44. Defendants General Muhammad al-Khuli, Mu'ammar al-Qadhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari performed acts within the scope of their offices, which caused the extrajudicial killings and personal injuries resulting from the act of terrorism described herein. Accordingly, said Defendants are jointly and severally liable to Plaintiffs.

45. Defendants Libya, and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari are directly and/or vicariously responsible for the actions of their co-defendants because they sponsored the Abu Nidal Organization. Accordingly, Defendants are jointly and severally liable to Plaintiffs.

## THE ROME AIRPORT ATTACK

46. On December 27, 1985, shortly after 9 a.m., four terrorists from the Abu Nidal Organization, with the aid, support, encouragement and involvement of the various

named Defendants, stormed the International Flights terminal of the Leonardo Da Vinci Airport in Rome, Italy, brandishing Kalashnikov submachine rifles and type F1 hand grenades, which they had smuggled into the airport. As is described more particularly below, the Defendants provided direct and indirect material support for the planning and operation of this terrorist attack.

47. Before commencing their attack, the terrorists divided themselves into two pairs of attackers, so that both pairs could enter simultaneously through two different entrances and head for their intended targets, the check-in counters for TWA and El Al Airlines.

48. One pair emerged from a tunnel that lead to the terminal entrance labeled "35-36-37-38" in a burst of gunfire and exploding hand grenades, aiming for the passengers waiting at the TWA and El Al check-in counters.

49. The other pair entered through the terminal entrance marked "31-32-33-34" and opened fire on passengers standing in front of a bar/restaurant near the counters.

50. When the terrorists paused, allowing for their identification amidst the passengers' confusion and distress, airport security agents for El Al Airlines fired shots aimed for the terrorists, killing three of them.

51. Unfortunately, two other individuals were also wounded by the security officers.

52. Ultimately 13 people were killed and 75 wounded in the Rome Airport Attack, among them women, children and the elderly.

53. A simultaneous attack was executed by ANO terrorists employing the same strategy at the Schwechat Airport in Vienna, Austria, killing an additional three people and wounding 30.

54. On the same day that the Rome and Vienna airport attacks were carried out, December 27, 1985, the ANO claimed responsibility for both massacres.

55. The sole surviving terrorist in the Rome Airport Attack, Khaled Ibrahim Mahmood, Khaled Ibrahim Mahmood, a/k/a Al Hasan, Mohamed Sorhan Abdallah, Mohamed Weled Hussein Al Abdallah, Issa Suleiman Abdallah, or Ahmed Hussein Al Ajlan ("Khaled") was arrested and tried in Italy in connection with the massacre at Rome's Leonardo da Vinci Airport.

56. On February 12, 1988, he was convicted by an Italian court of committing an act of terrorism, in addition to other related offenses, and sentenced to 30 years imprisonment and 1.5 million Italian lire in fines.

57. At his trial, Khaled admitted to being a member of the Abu Nidal Organization since the age of 11, and to participating in several ANO terrorist attacks, including the grenade attack on Rome's Café de Paris on September 10, 1985, during which the terrorists used the same type F1 grenades used in the Rome Airport Attack, the Vienna Airport Attack, and the hijacking of Egypt Air Flight 648 on November 23, 1985, all of which were directly supported by the government of Libya, and supported by the government of Syria.

58. Khaled also described in detail the planning and execution of the Rome Airport Attack.

59. He and the other members of his hit team were trained with the terrorists who conducted the Vienna Airport Attack at an ANO training camp in Syrian-controlled Lebanon.

60. During this training, he learned of a plan to conduct terrorist attacks at airports and tourist attractions frequented by Americans and Israelis, including an airport in Madrid, Spain.

61. Khaled was unavailable for the Madrid attack, but did not learn of anticipated role in the Rome Airport Attack until he arrived in Italy.

62. Upon conclusion of his training in Syria, Khaled met ANO leaders in charge of foreign operations and training at an apartment in Damascus, Syria, which served as the ANO's departure base for foreign operations.

63. He received airline tickets for travel to Rome as well as fake Moroccan passports before departing the foreign operations base.

64. Libya provided the terrorists who conducted the Rome and Vienna airport attacks with weapons and passports.

65. Upon arriving in Rome, Khaled met with ANO contacts Al Hamieda Rashid, a/k/a Mohamed Fouad ("Fouad") and Abu Mithkal ("ANO contacts") who provided him and his hit team members with weapons and operational instructions.

66. Khaled and his hit team learned of the objective of their attack, and were instructed to target as many Americans and Jews as possible, to take their passports and to hold them hostage.

67. The night before the attack, December 26, 1985, Khaled and another terrorist met Fouad and turned over their fake Moroccan passports.

68. The three went to Leonardo da Vinci Airport at approximately 11 p.m. to do a final check of the property, and Fouad identified the TWA and El Al counters.

69. On the morning of December 27, 1985, Khaled met his hit team and Fouad, each with the exception of Fouad carrying one or more suitcases holding smuggled weapons and personal belongings.

70. They arrived at the airport at seven minutes before 9 a.m. and commenced the attack.

71. The United States Department of State, Bureau of Public Affairs, Office of the Historian, in its report of Significant Terrorist Incidents, 1961- 2003, lists the Rome Airport Attack and the Vienna Airport Attack on December 27, 1985 as terrorist attacks that were conducted by the Abu Nidal Organization.

72. Background Information on Foreign Terrorist Organizations, released by the Office of Counterterrorism, of the United States Department of State, indicates that the ANO has received considerable support, including safe haven, training, logistical assistance, and/or financial aid from the states of Libya and Syria, each being a Defendant herein.

73. The instances of physical violence and/or death inflicted upon John Buonocore III, Salvatore Ferrigno, Frederick Gage, Don Maland, Mark Maland Charles Shinn, Jeanne Shinn, Elena Tommarello, Jeanette Sweis, Michael Sweis and Francesco Zerilli were undertaken intentionally upon them for the purpose of furthering the objectives of the governments of Libya and Syria and the terrorist objectives of the ANO, and such acts therefore constitute "torture" as defined in the TVPA.

## DEFENDANTS' SPONSORSHIP AND SUPPORT FOR
## THE ABU NIDAL ORGANIZATION

74. The government of Libya, and also separately the government of Syria, sponsored and supported the Abu Nidal Organization, a/k/a Black June, Black September, the Fatah Revolutionary Council, the Arab Revolutionary Council, the Arab Revolutionary Brigades, and/or the Revolutionary Organization of Socialist Muslims, a known terrorist organization which was headed by Sabri Al Bana a/k/a Abu Nidal, prior to and at the time of the Rome and Vienna airport attacks.

75. Despite Libya's recent attempts to rejoin the laws of nations and forgo a path of terrorism, this has not always been the case. Since Defendant Mu'ammar al-Qadhafi seized political control of Libya by military coup in 1969, Libya has balked at international norms, abusing diplomatic privileges and using terrorism as an instrument of its own foreign policy.

76. Libya has used threats of terrorism, its material support and operational assistance for terrorist attacks, and actual terrorist violence as a means of political opposition, specifically targeting the United States and Israel.

77. Libya supported radical terrorist groups generally by providing terrorist training outside of Libya and by operating terrorist training camps in Tripoli in order to train, instruct, support and educate terrorists on the use of explosive devices, hijacking, assassination, and various commando and guerrilla techniques, in addition to abusing its diplomatic privileges by, among other things, storing arms and explosives at its diplomatic establishments.

78. Throughout the 1980s, both directly and through material support and resources provided to terrorist organizations such as ANO, Libya engaged in a concerted

24

campaign of terrorist activities directed at the United States, Europe, Israel and their allies.

79. Libya's involvement in terrorism was particularly robust from early 1984 through several years after the Rome and Vienna airport attacks, which were committed on December 27, 1985.

80. Also during 1985, Libya was directly involved and/or provided material support for numerous terrorist attacks in addition to the Rome and Vienna airport attacks, including but not limited to the following:

    a. The ANO hijacking of Egypt Air Flight 648 on November 23, 1985, for which Libya provided passports and moved weapons in diplomatic pouches to the hijackers, allowing the terrorists to travel and to preposition their weapons for use in the attack;

    b. Also in November 1985, a team of four Libyan agents was arrested in Egypt in an attempt to assassinate former Libyan Prime Minister Bakoush, an enemy of the Qadhafi regime;

    c. The September 1985 ANO terrorist attack at Rome's Café de Paris, during which the ANO terrorists threw grenades provided by Libya at the restaurant, injuring 38 tourists, including American citizens;

    d. Also in September 1985, a Libyan diplomat smuggled approximately 100 letter bombs addressed to Tunisian journalists into Tunisia. Several of the bombs exploded, injuring two postal workers and causing Tunisia to sever diplomatic relations with Libya;

    e.  In the United States in May 1985, a Libyan diplomat at the United

        Nations was declared persona non grata, and 16 non-official Libyans

        were subpoenaed to appear before a U.S. grand jury in connection with

        a plot to kill dissidents in several different states;

    f.  In April 1985 in the former West Germany, Libyans were arrested at

        two separate murder scenes in which Libyans murdered a Moroccan

        citizen resident and an anti-Qadhafi Libyan student who had been the

        target of the Libyan regime for at least two years; and

    g.  In Austria in February 1985 the former Libyan Ambassador to Austria,

        who resigned from his post under the Qadhafi regime in disgust, was

        assassinated outside of his home in Vienna.

81.    The Abu Nidal Organization was, at all times relevant hereto, among the most dangerous and violent of the terrorist organizations supported by Libya and Syria, engaging in indiscriminate violence against bystanders, including children.

82.    As of February 1989, the ANO conducted terrorist attacks in more than 20 countries on three continents, killing more than 300 people and injuring at least 650.

83.    Libya provided substantial material support and sponsorship to the ANO, as well as providing logistical support for the ANO's specific terrorist operations.

84. The substantial material support to and sponsorship of the ANO by the government of Libya included, but was not limited to, assisting and/or providing the following:

    a.  funds,

    b.  facilities,

    c.  airline tickets,

    d.  free and unobstructed entry into, safe haven in, and exit from Libya by members of ANO,

    e.  terrorist training in Libyan camps,

    f.  use of the privilege of Libya's "diplomatic pouch",

    g.  use of Libya's diplomatic freight privileges,

    h.  official documents of all kinds, including passports,

    i.  provision of uniforms, tanks and BM021 multiple rocket launchers,

    j.  weapons, including hand grenades used in various ANO attacks, and

    k.  actual operational assistance in pre-positioning of people and supplies for the conduct of terrorist operations.

85.    During the year 1985 alone, the leader of the ANO met with Qadhafi at least twice, in addition to meeting separately with Qadhafi's chief lieutenant, Abd al-Salam Jallud, and conducting an interview from Tripoli.

86.  Following these meetings, ANO leadership began to relocate to Tripoli from Syria.

87.    With specific regard to the coordinated, simultaneous Rome and Vienna airport attacks, the government of Libya supported this operation by, among other things, providing the ANO terrorists who conducted the attacks with weapons and passports, which allowed the terrorists to travel.

88.  The hand grenades used in the Rome Airport Attack and the Vienna Airport Attack, as well as in the ANO terrorist attacks on the Café de Paris and Egypt Air Flight 648 bear the same markings as those found on four Libyan terrorists, who were arrested

27

on April 18, 1986, while approaching the US officers' club in Ankara, Turkey, carrying

the hand grenades, which they obtained from the Libyan People's Bureau.

89. The United States Central Intelligence Agency therefore concluded that "[t]he

similarities between the grenades seized in 1985 [in the Rome Airport Attack, the Vienna

Airport Attack, the Café de Paris attack and the Egypt Air Flight 648 hijacking] and those

captured in Turkey corroborate previous reporting that Tripoli provides operational

support for the Abu Nidal group and uses its diplomatic installations to pass weapons to

terrorists."

90. In the wake of the Rome and Vienna airport attacks, on January 2, 1986,

Qadhafi threatened to "pursue U.S. citizens in their country and streets" in retaliation for

any action taken by the United States in response to Libya's involvement in these terrorist

attacks.

91.     A Libyan news agency applauded the Rome and Vienna airport attacks as

"heroic operations carried out by the sons of the martyrs of Sabra and Shatila . . . ."

92.     The sponsorship by the government of Syria included, among other things,

the provision of training in Syrian sponsored ANO terrorist training camps, military and

general intelligence, travel documents, safe haven and free passage in and through Syrian

controlled territory.

93. Syria further provided general material support to the ANO by providing the

ANO with funds, travel documents, training support and protection at several facilities,

including those located in the Bekaa Valley.

94.     The sole surviving hijacker of the Rome Airport Attack, Khaled Ibrahim

Mahmood, confirmed that he and the other three members of his hit team, in addition to

the terrorists who carried out the Vienna Airport Attack, were trained in Syrian-occupied Lebanon by Syrians.

95.    Syria also permitted ANO operatives to maintain an apartment in Damascus, where ANO terrorists would regularly stay before departing on terrorist missions.

96.    It was customary for ANO terrorists to stay in this apartment during the organization phase of a given terrorist attack, and remain there until departing to conduct the attack.

97.    Khaled confirmed that he stayed in this departure base prior to leaving for Italy to commit the Rome Airport Attack.

98.    Had the attack not taken place as planned, or had Khaled escaped, he would have called the ANO's apartment in Damascus which served as the departure base for foreign operations to receive further instructions.

99.    The United States Department of State, Office of the Secretary of State, Ambassador-At-Large for Counter-Terrorism, concluded that the ANO conducted the Rome Airport Attack and the Vienna Airport Attack, classifying these terrorist attacks as among the most brutal examples of ANO violence.

100.    The Defense Intelligence Agency of the United States Department of Defense, and other intelligence agencies of the United States government, determined that the Abu Nidal Organization was sponsored by the governments of Libya and Syria.

101.    The provision of material support for the ANO, a known terrorist organization, by the government of Libya and the government of Syria, acting directly and by and through their individual governmental representatives as named in the

Complaint, and by other representatives of the government, constitute violations of applicable and numerous United States laws, thereby rendering the government of Libya, the government of Syria, and their individual governmental representatives named as Defendants herein, jointly and severally liable for their illegal acts and deeds, all to the damage of the Plaintiffs, and each of them, thereby entitling each to Judgment against each of the Defendants, jointly and severally, as prayed for in the within Complaint.

### COUNT I- 28 U.S.C. §1605A(c)

### (All Plaintiffs)

102.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

103.    On December 27, 1985, members of the ANO willfully, violently and forcefully committed terrorist acts at the International Flights terminal of the Leonardo da Vinci Airport in Rome, Italy with the express purpose of inflicting, personal injury, severe pain, suffering, death and severe emotional injuries.

104.    In addition, the acts of assaulting, terrorizing and holding John Buonocore III, Salvatore Ferrigno, Frederick Gage, Don Maland, Mark Maland, Charles Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Sweis Elena Tommarello, Francesco Zerilli, Natasha Simpson, Victor Simpson, and Michael Simpson, captive and each and all of the acts set forth above, constituted extreme and outrageous conduct with the intent to inflict emotional distress upon them and emotional distress, including solatium, upon members of their families.  Further these acts were undertaken for the purpose of causing severe mental duress and suffering, including solatium damages, upon the members of their families.

30

105.    The willful, wrongful and intentional acts of Abu Nidal terrorists were sponsored and directed by Libya, and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, and Libyan Internal Security Agency.

106.    Defendants General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari performed acts within the scope of their offices which sponsored the ANO 's terrorist activities, including but, not limited to the Rome Airport Attack.

107.    As a direct and proximate result of the willful, wrongful and intentional acts of the ANO members, whose acts were sponsored and directed by Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari, Plaintiffs John Buonocore III, Salvatore Ferrigno, Don Maland, Mark Maland, Charles Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Sweis, Elena Tommarello, Francesco Zerilli, Natasha Simpson, Victor Simpson and Michael Simpson were injured and/or killed in that they and their families endured extreme mental anguish, physical injury and pain and suffering, all to their damage.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of the estate and heirs of John Buonocore III, Don Maland, Charles Shinn, Jeanne Shinn, Michael Sweis, Elena Tommarello and Natasha Simpson, and on behalf of Salvatore Ferrigno, Nancy Gage, Mark Maland, Jeanette Sweis, Sayed Sweis  Francesco Zerilli, Victor Simpson and Michael Simpson demand that judgment be entered, jointly and severally, against Defendants for the damages they suffered, including, but not limited to, wrongful death,

31

pain, suffering, mental anguish, and pecuniary losses, in the amount of **ONE HUNDRED**

**MILLION ($100,000,000.00) US Dollars** for each of them, on this Count I, and their

costs expended; as to each of their, mothers, father, sisters, brothers, daughters, spouses

and sons above named, above in the amount of **TEN MILLION DOLLARS**

**($10,000,000.00)** for each and every one of them, on this Count I, and their costs

expended.

## COUNT II – BATTERY

### (Under State Common Law)

### (John Buonocore III, Salvatore Ferrigno, Don Maland, Mark Maland, Charles Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Sweis, Elena Tommarello Francesco Zerilli, Natasha Simpson, Victor Simpson, and Michael Simpson)

108.    Plaintiffs repeat, reallege and incorporate by reference those facts and

allegations set forth in all the foregoing paragraphs as if fully set forth herein.

109.    On December 27, 1985, members of the ANO willfully, violently and

forcefully committed terrorist acts at the International Flights terminal of the Leonardo da

Vinci Airport in Rome, Italy with the express purpose of inflicting severe pain and

suffering and death. John Buonocore III, Salvatore Ferrigno, Don Maland, Mark Maland,

Charles Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Swies, Elena

Tommarello, Francesco Zerilli, Natasha Simpson, Victor Simpson and Michael Simpson

were present at the terminal and were accordingly seized against their will. The willful,

wrongful and intentional acts of Abu Nidal were sponsored by Libya, and Syria, as well

as the Syrian Air Force Intelligence, the Libyan External Security Agency, and Libyan

Internal Security Agency constituted a battery upon the person(s) of John Buonocore III,

Salvatore Ferrigno, Don Maland, Mark Maland, Charles Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Sweis, Elena Tommarello, Francesco Zerilli, Natasha Simpson, Victor Simpson and Michael Simpson causing injury to them as set forth above.

110.    Defendants General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari performed acts within the scope of their offices which sponsored the ANO 's terrorist activities, including but, not limited to the Rome Airport Attack.

111.    As a direct and proximate result of the willful, wrongful and intentional acts of the ANO members, whose acts were sponsored by Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari, Plaintiffs John Buonocore III, Salvatore Ferrigno, Don Maland, Mark Maland, Charles Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Sweis, Elena Tommarello, Francesco Zerilli, Natasha Simpson, Victor Simpson, and Michael Simpson were injured in that they endured extreme mental anguish, physical injury and pain and suffering, all to their damage.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of the estate and heirs of John Buonocore III, Don Maland, Charles Shinn, Jeanne Shinn, Michael Sweis, Elena Tommarello, Natasha Simpson and on behalf of Salvatore Ferrigno, Mark Maland, Jeanette Sweis,Sayed Sweis,Francesco Zerilli, Victor Simpson and Michael Simpson demands that judgment be entered, jointly and severally, against the Defendants for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, loss

of life and/or limb, permanent and disabling disfigurement and physical injuries as well

as pecuniary losses, in the amount of **FIFTY MILLION ($50,000,000.00) US Dollars**

for each of them, on this Count II, and their costs expended, including attorneys fees.

### COUNT III – ASSAULT

### (Under State Common Law)

**(John Buonocore III, Salvatore Ferrigno, Don Maland, Mark Maland, Charles Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Sweis, Elena Tommarello, Francesco Zerilli, Natasha Simpson, Victor Simpson and Michael Simpson)**

112.    Plaintiffs repeat, reallege and incorporate by reference those facts and

allegations set forth in paragraphs in all the forgoing paragraphs as if fully set forth

herein.

113.    During the Rome Airport Attack, the ANO terrorists intentionally and

willfully put John Buonocore III, Salvatore Ferrigno, Don Maland, Mark Maland,

Charles Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Sweis, Elena

Tommarello,Francesco Zerilli, Natasha Simpson, Victor Simpson and Michael

Simpson, in fear for their lives and apprehension of harm and injury as a direct result of

the terrorists' actions in brandishing and firing weapons and explosives, and the

physical and mental abuse they inflicted upon them.

114.    As a direct and proximate result of the willful, wrongful and intentional

acts of the ANO members, whose acts were sponsored by Libya and Syria, as well as the

Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal

Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major

Abdallah al-Sanusi, and Ibrahaim al-Bishari, Plaintiffs John Buonocore III, Salvatore

Ferrigno, Don Maland, Mark Maland, Charles Shinn, Jeanne Shinn, Jeanette Sweis,

Michael Sweis, Sayed Sweis, Elena Tommarello, Francesco Zerilli, Natasha Simpson, Victor Simpson, Michael Simpson were injured in that they endured extreme mental anguish, physical injury and pain and suffering, all to their damage.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of the estate and heirs of John Buonocore III, Don Maland, Charles Shinn, Jeanne Shinn, Michael Sweis, Elena Tommarello, and Natasha Simpson, and on behalf of Salvatore Ferrigno, Mark Maland, Jeanette Sweis, Sayed Sweis, Francesco Zerilli, Victor Simpson and Michael Simpson demand that judgment be entered, jointly and severally, against the Defendants for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of **ONE HUNDRED MILLION ($100,000,000.00) US Dollars** for each of them, on this Count III, and their costs expended, including attorney's fees.

### COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, INCLUDING SOLATIUM

#### (Under 28 U.S.C. §1605A(c) and State Common Law)

#### (As to All Plaintiffs)

115.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all of the forgoing paragraphs as if fully set forth.

116.    The acts of terrorizing and holding John Buonocore III, Salvatore Ferrigno, Frederick Gage, Don Maland, Mark Maland, Charles Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Sweis, Elena Tommarello, Francesco Zerilli, Natasha Simpson, Victor Simpson, and Michael Simpson captive and each and all of the acts set forth above, constituted extreme and outrageous conduct with the intent to inflict emotional distress upon them and emotional distress, including solatium, upon members

of their families. Further these acts were undertaken for the purpose of causing mental duress and suffering, including solatium, upon the members of their families.

117.    As a direct result and proximate result of the willful, wrongful and intentional acts of the ANO, whose acts were sponsored by Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari, John Buonocore III, Salvatore Ferrigno, Frederick Gage, Don Maland, Mark Maland, Charles Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Sweis, Elena Tommarello, Francesco Zerilli, Natasha Simpson, Victor Simpson and Michael Simpson and their families, as above set forth, were each caused to suffer severe emotional distress.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of the estate and heirs of John Buonocore III, Don Maland, Charles Shinn, Jeanne Shinn, Michael Sweis, Elena Tommarello, Natasha Simpson, and on behalf of Salvatore Ferrigno, Nancy Gage, Mark Maland, Jeanette Sweis, Sayed Sweis Francesco Zerilli, Victor Simpson, and Michael Simpson demand that judgment be entered, jointly and severally, against Defendants for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of **ONE HUNDRED MILLION ($100,000,000.00) US Dollars** for each of them, on this Count IV, and their costs expended; as to each of their, mothers, father, sisters, brothers, daughters, spouses and sons above named, above in the amount of **TEN MILLION DOLLARS ($10,000,000.00)** for each and every one of them, on this Count IV, and their costs expended, including attorney's fees.

## COUNT V – ACTION FOR WRONGFUL DEATH

### (Under State Common Law and State Statutory Law)

**(Cecil Buonocore as the Personal Representative of the Estate of John Buonocore III, Nancy Gage, Mark Maland on behalf of the Estate of Don Maland, Beverley Mignerey, as the Personal Representative of the Estate of Charles Shinn, Bruno Pepenella on behalf of the Estate of Elena Tommarello, and David Simpson on behalf of Natasha Simpson)**

118.    Plaintiff Cecil Buonocore, as the Personal Representative of the Estate of John Buonocore III, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

119.    John Buonocore III's death was caused by a willful and deliberate act of extrajudicial killing as he was murdered by members of the ANO during the course of their terrorist act of murder against him, as an American citizen, acting under the sponsorship of defendants Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari.

120.    Plaintiff Nancy Gage, in her individual capacity and in her capacity as the person to whom the amount recovered for the wrongful death of Frederick Gage belongs, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

121.    Frederick Gage's death was caused by a willful and deliberate act of extrajudicial killing as he was murdered by members of the ANO during the course of their terrorist act of murder against him, as an American citizen, acting under the sponsorship of defendants Libya and Syria as well as the Syrian Air Force Intelligence,

the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari.

122.    Plaintiff Mark Maland, on behalf of the Estate of Don Maland, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

123.    Don Maland's death was caused by a willful and deliberate act of extrajudicial killing as he was murdered by members of the ANO during the course of their terrorist act of murder against him, as an American citizens, acting under the sponsorship of defendants Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari.

124.    Plaintiff Beverly Mignerey, as the Personal Representative of the Estate of Charles Shinn, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

125.    Charles Shinn's death was caused by a willful and deliberate act of extrajudicial killing, as his death resulted directly from injuries inflicted upon him by members of the ANO during the course of their terrorist act of murder against him, as an American citizen, acting under the sponsorship of defendants Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari.

126.    Plaintiff Bruno Pepenella, on behalf of the Estate of Elena Tommarello, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

127.    Elena Tommarello's death was caused by a willful and deliberate act of extrajudicial killing as she was murdered by members of the ANO during the course of their terrorist act of murder against her, as an American citizen, acting under the sponsorship of defendants Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari.

128.    Plaintiff David Simpson, on behalf of the Estate of Natasha Simpson, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

129.    Natasha Simpson's death was caused by a willful and deliberate act of extrajudicial killing as she was murdered by members of the ANO during the course of their terrorist act of murder against her, as an American citizen, acting under the sponsorship of defendants Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari.

**WHEREFORE,** Plaintiffs Cecil Buonocore, as the Personal Representative of the Estate of John Buonocore III, Nancy Gage, Mark Maland, on behalf of the Estate of Don Maland, Beverly Mignerey, as the Personal Representative of the Estate of Charles

Shinn, Bruno Pepenella, on behalf of the Estate of Elena Tommarello, David Simpson on

behalf of the Estate of Natasha Simpson, demand that judgment be entered, jointly and

severally, against Defendants for the damages they suffered, including, but not limited to,

pecuniary losses, which include, but are not limited to, the loss of future earnings, and

funeral and burial expenses, in the amount of **ONE HUNDRED MILLION**

**($100,000,000.00) US Dollars** on this Count V, and their costs expended, including

attorney's fees.

## COUNT VI – ACTION FOR SURVIVAL DAMAGES

### (Under State Common Law and State Statutory Law)

**(Cecil Buonocore as the Personal Representative of the Estate of John Buonocore III, Nancy Gage, Mark Maland on behalf of the Estate of Don Maland, Beverley Mignerey, as the Personal Representative of the Estate of Charles Shinn, Bruno Pepenella, on behalf of the Estate of Elena Tommarello, and David Simpson on behalf of Natasha Simpson)**

130.    Plaintiff Cecil Buonocore, as the Personal Representative of the Estate of

John Buonocore III, repeats, realleges and incorporates by reference those facts and

allegations set forth in each of the foregoing paragraphs if fully set forth.

131.    Before his death, John Buonocore III suffered extreme bodily pain and

mental anguish and suffering, entitling his estate to compensatory damages.

132.    Plaintiff Nancy Gage repeats, realleges and incorporates by reference

those facts and allegations set forth in each of the foregoing paragraphs if fully set forth.

133.    Before his death, Frederick Gage suffered extreme bodily pain and mental

anguish and suffering, entitling Nancy Gage to compensatory damages as Frederick

Gage's sister and the person to whom recovery for his death belongs.

134.    Plaintiff Mark Maland, on behalf of the Estate of Don Maland, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs if fully set forth.

135.    Before his death, Don Maland suffered extreme bodily pain and mental anguish and suffering, entitling his estate to compensatory damages.

136.    Plaintiff Beverly Mignerey, as the Personal Representative of the Estate of Charles Shinn, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs if fully set forth.

137.    Before his death, Charles Shinn suffered extreme bodily pain and mental anguish and suffering, entitling his estate to compensatory damages.

138.    Plaintiff Bruno Pepenella, on behalf of the Estate of Elena Tommarello, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs if fully set forth.

139.    Before her death, Elena Tommarello suffered extreme bodily pain and mental anguish and suffering, entitling his estate to compensatory damages.

140.    Plaintiff David Simpson, on behalf of the Estate of Natasha Simpson, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs if fully set forth.

141.    Before her death, Natasha Simpson suffered extreme bodily pain and mental anguish and suffering, entitling his estate to compensatory damages.

142.    Defendants Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim

al-Bishari are directly and/or vicariously responsible for the actions of their co-
defendants because they acted as sponsors of the Abu Nidal Organization.

**WHEREFORE,** Plaintiffs Cecil Buonocore, as the Personal Representative of
the Estate of John Buonocore III, Nancy Gage, Mark Maland, on behalf of the Estate of
Don Maland, Beverly Mignerey, as the Personal Representative of the Estate of Charles
Shinn,Bruno Pepenella, on behalf of the Estate of Elena Tommarello, David Simpson on
behalf of the Estate of Natasha Simpson demand that judgment be entered, jointly and
severally, against Defendants for the damages they suffered, including, but not limited to,
pain, suffering, mental anguish, and pecuniary losses, in the amount of **ONE HUNDRED
MILLION ($100,000,000.00) US Dollars** on this Count VI, and their costs expended,
including attorney's fees.

## COUNT VII – ACTION FOR CIVIL CONSPIRACY

### (Under State Common Law)

### (As to All Plaintiffs)

143.    Plaintiffs repeat, reallege and incorporate by reference those facts and
allegations set forth in each of the foregoing paragraphs as if fully set forth.

144.    Defendants Libya and Syria, as well as the Syrian Air Force Intelligence,
the Libyan External Security Agency, Libyan Internal Security Agency, General
Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim
al-Bishari did knowingly and willfully conspire with and/or agree to sponsor a terrorist
organization within the meaning of 28 U.S.C. § 1605A or 28 U.S.C. § 1605(a)(7) in the
alternative, which terrorist organization willfully and deliberately committed an act of
terrorism, which caused the injuries, and/or death of John Buonocore III, Salvatore

42

Ferrigno, Frederick Gage, Don Maland, Mark Maland, Charles Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Sweis Elena Tommarello, Francesco Zerilli, Natasha Simpson, Victor Simpson and Michael Simpson.

145.    For the reasons stated above, and having conspired to sponsor the terrorist organization which willfully and deliberately committed an act of terrorism which caused the injuries and/or death of John Buonocore III, Salvatore Ferrigno, Frederick Gage, Don Maland, Mark Maland, Charles Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Sweis, Elena Tommarello, Francesco Zerilli, Natasha Simpson, Victor Simpson, and Michael Simpson all defendants are jointly and severally liable to plaintiffs for all damages in this civil action.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of the estate and heirs of John Buonocore III, Don Maland, Charles Shinn, Jeanne Shinn, Michael Sweis and Elena Tommarello,Natasha Simpson, and on behalf of Salvatore Ferrigno, Nancy Gage, Mark Maland, Jeanette Sweis, Sayed Sweis, Francesco Zerilli, Victor Simpson, Michael Simpson demand that judgment be entered, jointly and severally, against Defendants in the amount of **ONE HUNDRED FIFTY MILLION ($150,000,000.00) DOLLARS** for each of them, on this Count VII, and their costs expended, including attorney's fees.

### COUNT VIII – ACTION FOR AIDING AND ABETTING

#### (Under State Common Law and State Statutory Law)

#### (As to All Plaintiffs)

146.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

147.    Defendants Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari did knowingly and willfully provide substantial assistance, material support and sponsor a terrorist organization within the meaning of 28 U.S.C. § 1605A, which terrorist organization willfully and deliberately committed an act of terrorism, which caused the injuries, and/or death of John Buonocore III, Salvatore Ferrigno, Frederick Gage, Don Maland, Mark Maland, Charles Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Sweis, Elena Tommarello, Francesco Zerilli, Natasha Simpson, Victor Simpson, and Michael Simpson.

148.    For the reasons stated above, and having aided and abetted a terrorist organization which willfully and deliberately committed an act of terrorism which caused the injuries and/or death of John Buonocore III, Salvatore Ferrigno, Frederick Gage, Don Maland, Mark Maland, Charles Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Sweis Elena Tommarello, Francesco Zerilli, Natasha Simpson, Victor Simpson, and Michael Simpson, all defendants are jointly and severally liable to plaintiffs for all damages in this civil action.

WHEREFORE, Plaintiffs, and each of them, on behalf of the estate and heirs of John Buonocore III, Don Maland, Charles Shinn, Jeanne Shinn, Michael Sweis and Elena Tommarello, Natasha Simpson and on behalf of Salvatore Ferrigno, Nancy Gage, Mark Maland, Jeanette Sweis, Sayed Sweis, Francesco Zerilli, Victor Simpson, and Michael Simpson, demand that judgment be entered, jointly and severally, against Defendants in

the amount of **ONE HUNDRED FIFTY MILLION ($150,000,000.00) DOLLARS** for

each of them, on this Count VIII, and their costs expended, including attorney's fees.

<u>**COUNT IX – PUNITIVE DAMAGES**</u>

<u>**(Under 28 U.S.C. 1605A(c) and State Common Law)**</u>

**(As to All Plaintiffs)**

149.    Plaintiffs repeat, reallege and incorporate by reference those facts and

allegations set forth in each of the foregoing paragraphs as if fully set forth.

150.    The actions of the ANO, as above set forth, were intentional and malicious

and in willful, wanton and reckless disregard of the rights and well being of John

Buonocore III, Salvatore Ferrigno, Frederick Gage, Don Maland, Mark Maland, Charles

Shinn, Jeanne Shinn, Jeanette Sweis, Michael Sweis, Sayed Sweis, Elena Tommarello,

Francesco Zerilli, Natasha Simpson, Victor Simpson, and Michael Simpson.  All of the

acts of the ANO were facilitated by funding, training, support and sponsorship by Libya

and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security

Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-

Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari.

151.    In providing such sponsorship General Muhammad al-Khuli, Mu'ammar

al-Qadhdhafi, Major Abdallah al-Sanusi, Ibrahaim al-Bishari rendered material support to

those actually carrying out the acts above described. The Plaintiffs are entitled to an

award of punitive damages and same is hereby requested against the defendants, jointly

and severally, in accordance with the provisions of 28 U.S.C. § 1605A making the

foreign states that are or were state sponsors of terrorism, and their officials, employees,

or agents of a nation which has been liable for punitive damages under the factual

45

circumstances as occurred during the course of committing these heinous and horrible acts of terrorism.

152.   In accordance with 28 U.S.C.1605A(c), Libya and Syria, as designated state sponsors of terrorism at the time of the Rome Airport Attack are vicariously liable for the acts of its officials, employees and agents.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of estate and heirs of John Buonocore III, Don Maland, Charles Shinn, Jeanne Shinn, Michael Sweis, Elena Tommarello and Natasha Simpson, and on behalf of Salvatore Ferrigno, Nancy Gage, Mark Maland, Jeanette Sweis, Sayed Sweis, Francesco Zerilli, Victor Simpson and Michael Simpson demand that judgment be entered, jointly and severally, against Defendants in the amount of **ONE BILLION US DOLLARS ($1,000,000,000.00)** for each of them, on this Count VIII, and their costs expended, including attorney's fees.

The award of punitive damages, as requested, is to punish Libya, Syria, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, Ibrahaim al-Bishari and other officials, employees, and agents of Libya and Syria for their conduct in supporting terrorism and the terrorist murderous acts described herein, and to send a message to them and others that the United States of America and its citizens respond to the lawless acts of terror and murder with the application of orderly justice.

### ADDITIONAL RELIEF REQUESTED

Plaintiffs request leave of Court to amend this Complaint, and for such further and other relief to which the Plaintiffs may be entitled, including prejudgment interest, as the interests of justice require.

Dated: February 22, 2008

Respectfully Submitted,

HEIDEMAN NUDELMAN
& KALIK, P.C.
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: 202-463-1818
Telefax:    202-463-2999

By: */s/ Richard D. Heideman*
    */s/ Tracy Reichman Kalik*
    Richard D. Heideman (No. 377462)
    Noel J. Nudelman (No. 449969)
    Tracy Reichman Kalik (No. 462055)

Steven R. Perles (No. 326975)
Edward MacAllister   (No. 494558)
THE PERLES LAW FIRM, PC
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: 202-955-9055
Telefax:    202-955-3806

*Of Counsel for Plaintiffs:*

F. R. Jenkins (Virginia Bar No. 36302)
Meridian 361 International Law
Group, PLLC
Temple Court Chambers
New Court
Temple
London EC4Y 9BE
United Kingdom
Tel. + 1-866-338-7087
Facsimile + 1-202-315-3894