**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**ESTATE OF JOHN BUONOCORE III,** *et al.***,**

   **Plaintiffs,**

         v.                                     **Civil Action No. 06-727 (JMF)**

**GREAT SOCIALIST PEOPLE'S LIBYAN
ARAB JAMAHIRIYA,** *et al.***,**

   **Defendants.**


**VICTOR SIMPSON,** *et al.***,**

   **Plaintiffs,**

         v.                                     **Civil Action No. 08-529 (JMF)**

**GREAT SOCIALIST PEOPLE'S LIBYAN
ARAB JAMAHIRIYA,** *et al.***,**

   **Defendants.**

**MEMORANDUM OPINION**

In my earlier opinion, issued on January 29, 2013,[1] I indicated that my calculation of punitive damages was guided both by Judge Collyer's decision in Gates v. Syrian Arab Republic, 580 F. Supp. 2d 53 (D.D.C. 2008) ("Gates I") and by Chief Judge Lamberth's decision in Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52 (D.D.C. 2010). Regrettably, that was not the case.

In Gates I, the court awarded each of the deceased victims' families (consisting of two family members) $150 million in punitive damages, for a total punitive damage award of $300

---

[1] See Buonocore v. Great Socialist People's Libyan Arab Jamahiriya, No. 06-CIV-727, 2013 WL 35154 (D.D.C. Jan. 29, 2013).

million. Gates I, 580 F. Supp. 2d at 75.  That case involved the taped beheading of two American civilian contractors by "al-Qaeda in Iraq." Id. at 56.

In Valore, the court applied a mean-terrorism-expenditures-times-five formula, and awarded $1 billion in punitive damages, to be "apportioned among the plaintiffs in proportion to their relative compensatory-damages awards." Valore, 700 F. Supp. 2d at 90.  That case involved the murder of 241 American military servicemen in a bombing of the U.S. Marine barracks in Beirut, Lebanon by Hezbollah, with the support of the Iranian government. Id. at 57, 75.

In Buonocore and Simpson, I awarded each of the 26 plaintiffs, who successfully brought a private federal cause of action pursuant to 28 U.S.C. § 1605A(c), $150 million in punitive damages, for a total punitive damages award of $3,900,000,000 or $3.9 billion, an amount which far exceeds the punitive damages awards in Gates I or Valore.  I have now concluded that my opinion was incorrect insofar as it did that.

In awarding each plaintiff punitive damages, I ignored the fundamental difference between an award of punitive damages and an award of compensatory damages.  As I noted in my earlier opinion, although the purpose of punitive damages is to punish outrageous conduct and deter its future occurrence, it must be predicated on the individualized and particular harm suffered by the person who was injured or killed. Buonocore, 2013 WL 35154, at *30.  That is not to say, however, that an award of punitive damages is designed to be particularized per victim.  Rather, the court must arrive at a number that will serve the interest of deterrence.  In other words, the court must find that the amount of punitive damages awarded is at least great enough to grab the tortfeasor's attention in order to convince him that the expense associated with the continuation of his behavior will outweigh any perceived benefit.  In cases involving terrorism, one way of calculating that amount has been to ascertain the amount of money that the

2

defendant spends aiding and abetting terrorist groups to perpetrate their outrageous conduct. The court then takes that figure and applies a multiplier, depending upon the egregiousness of the incident or, as in Valore, an increase in the funding of terrorism. See Valore, 700 F. Supp. 2d at 89-90) ("Although this level of punitive damages is significantly higher than any previously rendered against Iran, the award is justified by the continuing need to punish and deter Iran from its increasing support of terrorism . . .").

My error was to mistakenly combine, in one punitive damage award, the goals of deterrence and compensation. They must be kept separate, lest obvious inequities arise. As I noted above, as my opinion currently stands, the 26 plaintiffs would receive $3.9 billion in punitive damages when the 241 plaintiffs in Valore only received $1 billion. That result cannot be justified by any reason that I can see. Accordingly, I will vacate my previous individualized award of punitive damages in favor of a comprehensive award to all plaintiffs of an amount that I hope will deter Syria from continuing to sponsor terrorist activities. Following Valore, I shall take the figure of $600 million, the average amount of Syria's annual expenditures on terrorism,[2] and apply a multiplier of five, to arrive at a total punitive damage award of $3 billion. While that is greater than the $1 billion awarded in Valore, the amount spent by Syria to support terrorist activities in this case is greater than the amount spent by Iran in Valore.

Finally, I note that my earlier damages calculation erroneously awarded prejudgment interest on a subtotal that included the punitive damage award. An amended chart is attached and an amended judgment will also be separately issued.

JOHN M. FACCIOLA
U.S. MAGISTRATE JUDGE

---

[2] According to the testimony of Dr. Marius Deeb, Syria spends between $500 and $700 billion annually on terrorism-related expenditures. Buonocore, 2013 WL 35154, at *30.