**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**ESTATE OF JOHN BUONOCORE III,** *et al.***,**

    **Plaintiffs,**

        v.                                    Civil Action No. 06-727 (JMF)

**GREAT SOCIALIST PEOPLE'S LIBYAN
ARAB JAMAHIRIYA,** *et al.***,**

    **Defendants.**

**VICTOR SIMPSON,** *et al.***,**

    **Plaintiffs,**

        v.                                    Civil Action No. 08-529 (JMF)

**GREAT SOCIALIST PEOPLE'S LIBYAN
ARAB JAMAHIRIYA,** *et al.***,**

    **Defendants.**

### THIRD FINDINGS OF FACT AND CONCLUSIONS OF LAW[1] AND ORDER

The only remaining issue in these related cases is whether the Pepenella brothers have articulated a viable cause of action. As noted previously, the Court has subject matter jurisdiction over their claims:

> With respect to the Pepenella brothers, although they were not U.S. nationals at the time of the attack, their mother, Elena Tomarello, was a naturalized U.S. citizen at the time of the incident. Therefore, because the FSIA grants this court subject matter jurisdiction over cases where either "the claimant *or the victim* was, at the time of the [terrorist] act" (emphasis added), a U.S. national and because Elana

---

[1] The opinion incorporates by reference the first Findings of Fact and Conclusions of Law [#109] and the Second Findings of Fact and Conclusions of Law [#110] issued in both cases on January 29, 2013. The document numbers given in this opinion refer to those assigned in the earlier civil action, 06-727.

> Tomarello was a U.S. national by virtue of being a naturalized U.S. citizen, this court has subject matter jurisdiction over the Pepenella brothers' claims.

[#110] at 9.

Again, as noted previously by the Court, although the Pepenella brothers do not have a private federal right of action, they "can nevertheless pursue 'pass through' claims under applicable state or foreign law, based on the waiver of sovereign immunity granted in § 1605A(a)(2)(A)(ii). Leibovitch, 697 F.3d at 572 n.6." Id. at 11.  To this end, the Court directed them to file a supplemental memorandum more fully explaining the basis for their state law claims, which they have now done.  In the interests of brevity, the Court will not repeat herein the findings of fact it previously made with respect to the Pepenella brothers, but will simply provide its conclusions of law.

## CONCLUSIONS OF LAW

In the Second Amended Complaint for Compensatory and Punitive Damages [#82], the Pepenella brothers assert claims for 1) common law intentional infliction of emotional distress, including solatium, 2) common law civil conspiracy, 3) common law and state statutory law aiding and abetting, and 4) common law punitive damages. Id. at 31-33, 39-43.  In their most recent submission, however, the Pepenella brothers only assert claims for common law intentional infliction of emotional distress and common law civil conspiracy. Pepenella Plaintiffs['] Supplemental Findings of Fact and Conclusions of Law [#113] at 3-4.  With respect to those claims, the Pepenella brothers contend that the Court should apply Florida law to Armando's claims, as he was domiciled there at the time of the attack, and that the Court should apply Pennsylvania law to Bruno's claims, as he was domiciled there at the time of the attack. Id.

I.   The District of Columbia's Choice of Law Rules Apply

In the District of Columbia, federal courts analyzing claims under the FSIA apply the choice of law rules of the forum state. <u>Oveissi v. Islamic Republic of Iran</u>, 573 F.3d 835, 841 (D.C. Cir. 2009) ("We thus agree with the Second Circuit that applying the forum state's choice-of-law principles, rather than constructing a set of federal common law principles, better effectuates Congress' intent that foreign states be 'liable in the same manner and to the same extent as a private individual' in FSIA actions. 28 U.S.C. § 1606.").

II.     <u>Italy's Substantive Law Applies to the Pepenella Brothers' Claims</u>

Under the District of Columbia's choice of law rules, the Court must first determine whether a conflict exists between 1) the law of the forum state (the District of Columbia), 2) the law of the place where the tort or terrorist attack occurred (Italy), or 3) the law of the states where the Pepenella brothers were domiciled at the time of the attack (Florida and Pennsylvania). See <u>USA Waste of Md., Inc. v. Love</u>, 954 A.2d 1027, 1032 (D.C. 2008). The Pepenella brothers contend simply that the Court should apply the law of the domicile state of each of the brothers. They offer no evidence or argument as to the application of the law of the forum or of Italian law to the Pepenellas' claims. The Court, therefore, has no evidence before it as to the laws of Italy. Assuming, however, that there is a conflict between these laws, the Court concludes, utilizing the District of Columbia's constructive blending of the "government interests analysis" and the "most significant relationship" test, that the laws of Italy should apply. See <u>Oveissi</u>, 573 F.3d at 842.

The governmental interests analysis requires the court to "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." <u>Id.</u> (quoting <u>Hercules & Co., Ltd. v. Shama Rest. Corp.</u>, 566 A.2d 31, 41 (D.C. 1989)). The most significant

relationship test requires the court to consider 1) "the place where the injury occurred," 2) "the place where the conduct causing the injury occurred," 3) the domicil[e], residence, nationality, place of incorporation and place of business of the parties," and 4) "the place where the relationship, if any, between the parties is centered." Id. (quoting Restatement (Second) of Conflict of Laws § 145(2) (1971)).

In Oveissi, a U.S. citizen living in France brought suit under the FSIA for the assassination, by the Islamic Republic of Iran and its Ministry of Information and Security, of his grandfather, a former Iranian military officer who was also living in France. Oveissi, 573 F.3d at 837. Applying the combined governmental interests/most significant relationship test, the court of appeals concluded that 1) "France has a strong governmental interest in both deterring attacks within its sovereign borders and ensuring compensation for injuries to its domiciliaries," and 2) France had the most significant relationship to the murder. Oveissi, 573 F.3d at 835, 841. Significantly, the appellate court overturned the trial court's application of California state law to plaintiff's claims, noting that although plaintiff was born and briefly resided in California, he did not live there at the time of the murder and that, although the U.S. generally "has a strong [governmental] interest in applying its domestic law to terrorist attacks on its nationals," the victim was not a U.S. national, nor was there any evidence that the U.S. or its nationals were the object of the attack. Id. at 843.

With respect to the Pepenella brothers' claims, although the victim, their mother, was a U.S. national, they were not at the time of the attack. Thus, while the U.S. arguably has an interest in applying its domestic law to its aggrieved domiciliaries, that interest is diminished when those domiciliaries are not U.S. nationals.

More significantly, there is no evidence in the record that the U.S. or its nationals were the specific object of Abu Nidal's attack on the Rome Airport in 1985. At most, plaintiffs' experts note in general terms that Syria has historically used terrorism to effectuate its foreign policy goals, which often involved the U.S. See, e.g., [#109], ¶ 3 ("Historically, Syria has provided material support to terrorist groups primarily in order to achieve foreign policy goals, such as pushing the United States and its allies out of the region."); ¶ 5 ("Syrian sponsored terrorist activities were, and continue to be, primarily directed against any entity supportive of that process, including moderate Arab states such as Egypt, pro-Yassir Arafat Palestinian groups, and U.S. and Israeli targets."); ¶ 7 ("Syria utilized, and continues to utilize, terrorist groups as a means of achieving foreign policy goals without resorting to conventional methods of warfare, which it cannot afford to wage against either Israel or the United States."). For purposes of determining the appropriate substantive law to apply to the Pepenella brothers' claims, the ANO's attack on passengers in the vicinity of the El Al and TWA ticket counters at the Rome Airport is clearly distinguishable from, for example, those terrorist attacks that have directly targeted U.S. facilities and U.S. nationals working abroad. See, e.g., Owens v. Republic of Sudan, 826 F. Supp. 2d 128, 155 (D.D.C. 2011) (in FSIA action brought by foreign national employees of the U.S. government and their family members against Sudan and Iran for injuries and damages arising from the state-sponsored terrorist bombing of U.S. embassies in Kenya and Tanzania, governmental interests test favored application of U.S. domestic law); Estate of Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1, 21-22 (D.D.C. 2011) (in FSIA action brought by foreign national employees of the U.S. government and their family members against Iran for injuries and damages arising from the state-sponsored terrorist bombing of two U.S. embassy facilities in Lebanon, governmental interests test favored application of U.S. domestic law);

5

Holland v. Islamic Republic of Iran, 496 F. Supp. 2d 1, 22 (D.D.C. 2005) (in FSIA action brought by U.S. servicemen and their families against Iran for injuries and damages arising from the state-sponsored terrorist bombing of U.S. marine barracks in Lebanon, governmental interests test favored application of U.S. domestic law).

Finally, Italy has both a strong governmental interest in deterring attacks within its sovereign borders and the most significant relationship to the attack in that 1) the attack occurred Rome, the Italian capital, and 2) Khaled Ibrahim, one of the terrorists involved in the Rome Airport attack, was convicted in an Italian court and is serving a life sentence in an Italian prison for his role in the attack.

III.   Supplemental Briefing is Required

Having determined that Italy's substantive law applies to the Pepenella brothers' claims, the Court must now apply that law to the claims before it. To that end, plaintiffs shall file, on or by May 14, 2013, a supplemental brief explaining how, as a matter of Italian civil law, the Pepenella brothers are entitled to damages for intentional infliction of emotional distress and civil conspiracy, the two counts they now assert. The Court expects plaintiffs to refer to those specific provisions of Italian law that support their conclusions and provide the Court with translations of the same. See Fed. R. Civ. P. 44.1.

**SO ORDERED.**

JOHN M. FACCIOLA
U.S. MAGISTRATE JUDGE